David NEWMAN *v.* STATE of Arkansas

CR 96-685                                        939 S.W.2d 811

Supreme Court of Arkansas
Opinion delivered February 17, 1997

[Petition for rehearing denied March 24, 1997.]

*Larry J. Steele,* for appellant.

*Winston Bryant,* Att'y Gen., by: *Vada Berger,* Asst. Att'y Gen., for appellee.

ANNABELLE CLINTON IMBER, Justice. This is a criminal case where the appellant, David Newman, was convicted of the delivery of controlled substances. Newman relies upon six points of error in this appeal. We affirm for the reasons stated herein.

On December 1, 1994, Sheriff Richard Rapert, working for the Drug Task Force of the Third Judicial District, prepared two confidential informants, Mike Sanders and Patricia Williams, to make a controlled drug buy from the appellant, David Newman. Williams was Newman's ex-wife. Rapert wired them with body microphones in order to make a tape recording of their conversations, and gave them purchase money. Rapert also searched them for the presence of drugs. Joe Grooms, a marshall in Maynard and Sanders's half-brother, aided Rapert by searching Williams's vehicle for drugs.

Williams and Sanders drove to Newman's house, followed by Rapert and Grooms. No one was at Newman's residence. They then proceeded to Donald Stacy's house. Newman was there and Williams went inside to initiate the purchase. Newman came outside and met Sanders. Sanders asked Newman "if he had some smoke." Newman explained that he had methamphetamine and marijuana available. Sanders ultimately bought a quantity of marijuana and methamphetamine for a total of $75. Rapert later met with the informants and Williams handed him two bags containing methamphetamine and marijuana.

The conversation between Newman and Sanders was recorded on tape. Rapert and Grooms, who both knew Newman, testified that they recognized the voice on the tape as Newman's. The testimony at trial conflicted as to where the actual transaction took place. Sanders testified that the sale took place outside of Stacy's residence, while Williams said that they drove back to Newman's house to make the sale. On re-direct, Williams conceded that she did not know where the sale took place.

David Newman was tried and convicted of delivery of methamphetamine and delivery of marijuana. The jury imposed sentences of forty years and ten years, respectively, along with $50,000 in fines. On appeal, Newman raises six points of error.

### 1. Disqualification of jurors.

Newman's first argument is that the trial court erred in failing to disqualify prospective jurors. The week before his trial, Newman was tried in another drug case involving delivery of methamphetamine. This prior trial resulted in a mistrial due to evidence that was improperly admitted. Nonetheless, the trial court utilized the same jury panel to select jurors in both trials, excluding those thirteen jurors that were seated in the prior trial from the panel in the present case. Of those present in the panel, only two prospective jurors had not been a part of the panel the prior week.

Newman moved to quash the panel, arguing that they were tainted by their knowledge that Newman had been charged in

another matter and by their voir dire the previous week. The trial court denied the motion and voir dire of the panel proceeded.

■ Jurors are presumptively unbiased and the burden is on the appellant to prove otherwise. *Esmeyer v. State*, 325 Ark. 491, 930 S.W.2d 302 (1996). Moreover, a trial court's findings regarding juror bias will not be reversed absent an abuse of discretion. *Id.*

In *Goins v. State*, 318 Ark. 689, 890 S.W.2d 602 (1995), members of the jury panel had been through voir dire during the separate trial of one of the appellants' codefendants. At the trial the appellants moved to quash the panel arguing that the entire panel had been tainted through their exposure to the prior voir dire. The trial court denied the motion and this court affirmed.

While the *Goins* court noted that defendants could exclude those jurors who served on jury trials of codefendants, "the right has not been extended to exclude potential jurors who have not actually served as jurors in a prior trial involving the same offense." *Id.* (citing *McClendon v. State*, 316 Ark. 688, 875 S.W.2d 55 (1994)). It was undisputed that all of the jurors who actually sat in the prior trial were excluded from the venire. Furthermore, the trial court allowed the parties to pursue the possibility of bias in voir dire, and at no time did the appellants challenge a juror for their presence during voir dire in the codefendant's case. Moreover, on appeal, the appellants failed to identify a juror who should not have been seated. In sum, the appellants failed to meet their burden to prove that the jury was biased and the *Goins* court concluded that the trial court did not abuse its discretion in refusing to strike the jury panel.

■ In the present case, all of the jurors seated in the prior trial were excluded from the venire, and the trial court allowed counsel to pursue the possibility of bias in voir dire. Newman failed to explore the possibility of juror bias with regard to their presence in the prior voir dire, except for asking one question about whether anyone had not been present the prior week. Furthermore, Newman failed to identify any particular jurors who were biased. Newman also failed to present evidence that any jurors were biased by their presence during voir dire the previous

week. We find that the trial court did not abuse its discretion by failing to quash the jury panel.

## 2. Scope of cross-examination.

Newman's second argument is that the trial court erred in limiting his cross-examination of Marvin Poe, coordinator of the Third Judicial Drug Task Force. At trial, the State called Marvin Poe, the coordinator of the Third Judicial Task Force, to establish a chain of custody for the drug evidence. Defense counsel attempted to cross-examine Poe concerning the lack of drug arrests of professionals and the "holding" of drug cases until election time for county officials. However, the trial court ruled that "I'm not going to sit up here and listen to stuff that's just a general browbeating of the drug task force unless you can relate it to this man's case."

On appeal, Newman argues that the evidence concerned the motive and credibility of drug task force members, and that "[p]ursuant to Rules 401, 402 and 403 of the Arkansas Rules of Evidence, this evidence was more probative than prejudicial and should have been admitted." However, a trial court has wide latitude to impose reasonable limits on cross-examination based upon concerns about confusion of issues or interrogation that is only marginally relevant. *Gordon v. State*, 326 Ark. 90, 931 S.W.2d 91 (1996). This court will not reverse the trial court's ruling absent an abuse of discretion. *Id*; *Biggers v. State*, 317 Ark. 414, 878 S.W.2d 717 (1994).

Here, Poe's proffered testimony concerned when and against whom the task force decided to file charges. Poe testified that he never waited until a particular time to file cases, but that "I don't remember, something may have been said to the effect, 'Can you file some charges now' or something, you know, I don't know, but it's possible." Poe also testified that he had never filed any cases against doctors or lawyers, but that he had two cases pending against farmers.

Clearly, the relevance of this testimony to Newman's case was marginal at best. While Newman makes the vague assertion that this testimony was relevant on motive and credibility, it

cannot be said that the trial court abused its wide discretion in imposing reasonable limits on cross-examination by excluding the proffered testimony. Accordingly, we affirm as to this point.

### 3. Admissibility of tape recording.

Newman's third argument is that the trial court erred in admitting a tape of the alleged sale upon which these charges are based, which tape also contained statements concerning other sales that were the basis of other charges. For this point, Newman argues that the trial court abused its discretion in admitting the tape recording of the conversation between him and Sanders. According to Newman, the probative value of the tape was substantially outweighed by the danger of unfair prejudice under Ark. R. Evid. 403, given that the tape made references to other drug transactions.

While a transcript of the tape recording is found in the record, Newman has failed to abstract the transcript or what was recorded on the tape. The record on appeal is confined to that which is abstracted, and failure to abstract a critical matter precludes this court from considering the issue on appeal. *Edwards v. State*, 321 Ark. 610, 906 S.W.2d 310 (1995). Thus, it is impossible for this court to review the contents of the tape in order to determine whether the trial court abused its discretion. We accordingly affirm without reaching the merits.

### 4. Adequacy of chain of custody.

Newman's fourth argument on appeal is that the trial court erred in admitting evidence over his objection based on chain of custody. Newman objected to the introduction of State's Exhibits 1, 1A, 1B, 1C, 1D, and 1E based on chain of custody, and now argues on appeal that the trial court erroneously overruled his objection.

Richard Rapert testified that he recognized State's Exhibit 1D and 1E as the two bags of marijuana and methamphetamine that he received from Williams following the controlled buy. Rapert further stated that he placed State's Exhibit 1D into an envelope, State's Exhibit 1B, and that he placed State's Exhibit 1E

into another envelope, State's Exhibit 1C. Then he placed the two smaller envelopes into a larger envelope, State's Exhibit 1A. Attached to State's Exhibit 1A was State's Exhibit 1, a state crime laboratory submission sheet that had Rapert's handwriting on it.

Rapert further explained that Marvin Poe opened State's Exhibit 1A a week prior to trial in order to determine if the evidence numbers on the smaller envelopes matched the numbers found on the larger envelope. He said that Poe did this in his presence. The smaller envelopes containing the contraband, State's Exhibits 1B and 1C, were not opened at the time.

Michael Stage, a chemist with the state crime lab, testified that he recognized the exhibits as those upon which he performed a chemical analysis. His tests showed that State's Exhibit 1D was a baggie containing 4.4 grams of marijuana, while State's Exhibit 1E was a ziplock bag containing .15 grams of methamphetamine hydrochloride. Stage further testified that after he performed the chemical analysis, he resealed the bags and placed them back inside their respective envelopes for resubmission to the evidence room at the state crime lab. He recognized the seal that he placed on the outside envelope and the case number and date he wrote on it.

Stage also testified that he was present when Poe opened State's Exhibit 1A earlier in the week. The following colloquy then occurred between defense counsel and Stage:

Q: There were some items actually missing from that bag that were supposed to be in that bag [State's Exhibit 1A], weren't there?

A: At the time there was, yes.

Q: Did you make a list of the items that you found in the bag at the time that it was opened? Did you inventory the bag, so to speak, this past week when it was opened?

A: I didn't make any notes. I remember what was missing, yes.

* * *

Q: And you have no idea where this bag has gone this past week since, since you opened it.

A: No.

Q: So really, it's your testimony the seal on the, on the bag itself which contained the other evidence, items of evidence, was broken before court today by yourself.

A:   Are we talking about the right case? Or was that another?

Q:   I'm, I'm talking about 1A.

A:   I believe there was another case that this happened to.

[BENCH CONFERENCE]

STAGE CONTINUING: It was not this envelope that was in question that day.

Q:   But 1A is the envelope that, that was previously opened in the Judge's chambers, is that correct?

A:   No.

Q:   That's not the envelope?

A:   This one was opened, yes. But this was not the one in question.

On redirect examination, Stage explained that State's Exhibit 1A had been opened while looking for evidence used in another case, and that the evidence was not found in the envelope.

Marvin Poe then testified that he recognized State's Exhibit 1A, and that he had opened it the prior week to see if the evidence numbers found on State's Exhibit 1B and 1C matched the laboratory control number found on the attached laboratory submission sheet, State's Exhibit 1. He then placed the smaller envelopes back in the larger envelope, and he signed and dated it to reflect when and where he opened it. He returned State's Exhibit 1A to the Drug Task Force evidence locker in Newport, Arkansas. The day before trial, Poe retrieved the bag from the evidence locker and placed it with his secretary (and wife), Judy Poe, to be picked up hours later by Rapert.

Finally, Judy Poe testified that she recognized and received State's Exhibits 1 and 1A from Michael Poe and that she passed them along to Rapert the day before trial. Rapert ultimately testified that he received State's Exhibit 1A from Judy Poe the day before trial at the Drug Task Force office.

■ Evidentiary matters regarding the admissibility of evidence are left to the sound discretion of the trial court and rulings in this regard will not be reversed absent an abuse of discretion. *Lee v. State*, 326 Ark. 229, 931 S.W.2d 433 (1996); *Harris v. State*, 322 Ark. 167, 907 S.W.2d 729 (1995). This court has consistently stated that the purpose of establishing a chain of custody is to pre-

vent the introduction of evidence that is not authentic or that has been tampered with. *Id.* However, the trial court must be satisfied within a reasonable probability that the evidence has not been tampered with; it is not necessary that the State eliminate every possibility of tampering. *Id.*

In the present case, we conclude that the State established within a reasonable probability that the evidence had not been tampered with. While the somewhat confusing testimony of Stage at first established that items were missing from State's Exhibit 1A, he later clarified that he was referring to another matter. State's Exhibits 1B and 1C, the envelopes containing the contraband, were not themselves opened when Poe examined State's Exhibit 1A the week prior to trial. Moreover, Rapert ultimately confirmed that State's Exhibit's 1D and 1E were the substances that he received from Patricia Williams. We therefore conclude that the State established an adequate chain of custody and that the trial court did not abuse its discretion in admitting the State's exhibits.

### 5. AMCI 2d 9401-02 Jury Instructions.

Newman's fifth argument is that the trial court erred in instructing the jury during the sentencing phase that he would do one-sixth of the time received. During the sentencing phase of trial, the trial court instructed the jury with regard to the range of possible punishment and Newman's possible parole eligibility. *See* AMCI2d 9401-02. Newman objected to the bifurcated nature of the proceedings, arguing that informing the jury of possible parole eligibility denied him "due process of law and equal protection because it preconceives an idea of what is going to happen." Newman also proffered jury instructions that combined the guilt and sentencing determinations.

Following Newman's constitutional objection to the bifurcated proceedings, the trial court did not issue a ruling. Newman proffered his proposed jury instructions, after which the trial court inquired, "Anything else?" Then, Newman moved for a directed verdict, challenging the sufficiency of the State's proof on the ele-

ment of delivery. After this motion, the trial court simply responded, "Uh-huh," and proceeded to instruct the jury.

To preserve arguments for appeal, even constitutional ones, the appellant must obtain a ruling. *Danzie v. State*, 326 Ark. 34, 930 S.W.2d 310 (1996); *Bonds v. State*, 310 Ark. 541, 837 S.W.2d 881 (1992); *State v. Torres*, 309 Ark. 422, 831 S.W.2d 903 (1992). Because Newman failed to obtain a ruling from the trial court on his objection to the bifurcated proceedings, he has not preserved that issue for appeal. Thus, this court must summarily affirm on this point for failure to obtain a ruling below.

### 6. Validity of arrest warrant.

Newman's final argument is that the trial court erred in failing to suppress the evidence as charges filed against him were based on the unsworn statement of a confidential informant. For this point, Newman challenges the validity of the arrest warrant issued against him, because its supporting affidavit executed by Rapert contained unsworn statements made by confidential informants.

Newman first contends that "he was denied due process and equal protection under state and federal constitutions because of the manner in which charges were filed against him." However, Newman fails to explain with any convincing legal argument how the "manner in which charges were filed against him" deprived him of due process or equal protection of the laws. Moreover, he fails to cite to any authority for this proposition. Thus, this court must affirm for failure to cite to authority. *See Williams v. State*, 325 Ark. 432, 930 S.W.2d 297 (1996); *Roberts v. State*, 324 Ark. 168, 919 S.W.2d 192 (1996).

Newman further contends that an arrest warrant's supporting affidavit containing statements from confidential informants must also include sworn statements from those informants. He relies on Ark. R. Crim. P. 7.1, governing the basis for the issuance of an arrest warrant, and *Davis v. State*, 293 Ark. 472, 739 S.W.2d 150 (1987), where this court observed *inter alia* that the State has the burden of showing that an arrest warrant's supporting affidavit is in compliance with the law.

Simply put, these authorities do not support New-man's contention. Here, Rapert applied for an arrest warrant under oath, stating that two confidential informants met with Newman and purchased marijuana and methamphetamine from him. Supporting affidavits commonly contain hearsay statements from informants and Rule 7.1 simply does not require that such statements be made under oath. We accordingly find that the trial court did not err in denying the motion to suppress, and affirm as to this point.

Affirmed.