Mitchell JONES *v.* STATE of Arkansas

CA CR 02-1123 105 S.W.3d 835

Court of Appeals of Arkansas
Division II
Opinion delivered May 21, 2003

*The Cannon Law Firm, P.L.C.,* by: *David R. Cannon,* for appellant.

*Mike Beebe*, Att'y Gen., by: *Misty Wilson Borkowski*, Ass't Att'y Gen., for appellee.

WENDELL L. GRIFFEN, Judge. This appeal arose from a criminal conviction in Pulaski County for possession of a controlled substance (marijuana) with intent to deliver, resulting in a twenty-five-year sentence. Mitchell Jones argues on appeal that the trial court abused its discretion by admitting into evidence the State's exhibits concerning the marijuana over his chain-of-custody objection, based solely on a discrepancy between the weight of the marijuana as stated in the police report and the crime lab report. We affirm.

On or about September 12, 2000, members of the Little Rock and North Little Rock Police Departments' drug interdiction units received information that appellant might have picked up a suspicious bag, which allegedly smelled of marijuana, from the North Little Rock bus terminal to travel by taxi cab toward the Little Rock National Airport. Once there, appellant removed his automobile from a parking lot at the airport. Ultimately, Detectives Kyle King, Todd Spafford, and Grant Humphries acted on the information and stopped appellant's vehicle. A police dog alerted the officers to the trunk of the vehicle, from which the officers seized two duffel bags containing eight bundles of marijuana, four rolled marijuana joints, and personal items.

At trial, appellant objected to the introduction of the seized items because he contended that the chain of custody was not established to the necessary extent. He based his challenge on the discrepancy between the weight of the marijuana according to the officer who seized it and the weight of the marijuana according to the state crime laboratory chemist. The trial court overruled the objection because it found that there was testimony that explained the weight difference.

Specifically, there was testimony that Detective Humphries placed the two duffel bags in a cardboard box and weighed the entire contents of the box. Thus, Humphries arrived at a weight of approximately fifty-nine pounds. That weight included the duffel bags, the various bundles and joints of marijuana in their original packaging, as well as toiletry items, towels used to wrap the marijuana bundles, and a pair of underwear, shorts, and a shirt. Furthermore, Humphries testified that he maintained custody of the bags

and all of their contents. After taking inventory of the contents of the bags, he returned the bags and their contents to the cardboard box, sealed the box, initialed the seal, and stored it in the property locker until it was taken to the state crime laboratory.

Another witness for the State, state crime laboratory forensic drug chemist Chris Larsen, testified that he checked the box out from a secured location where evidence is stored once it is received from the police. The chemist testified that the box was sealed when he received it. He then removed the marijuana bundles from the bags, removed their original packaging, and weighed only the marijuana substance. Thus, he arrived at a total weight of the marijuana of approximately 42.7 pounds.

Upon cross-examination of Larsen, the following colloquy took place:

Q Would it be common in roughly 38 days for [the marijuana] to lose almost a third of its weight by evaporation?

A I don't really know the rate that marijuana dries out. I couldn't testify about that, but I would think it probably wouldn't lose that much.

Q Would you say maybe a couple of ounces here, a couple of ounces there?

A This is a lot of marijuana. I don't know how many ounces or grams it would lose in that amount of time. I really don't know.

Q Okay. Would it surprise you to know that somehow this lost 17 pounds of marijuana somewhere down the road?

A Would it surprise me?

Q Yeah.

A If it was lost?

Q Well, they weighed in at 59 pounds.

A Who's they?

Q The police department. They weighed it in at 59 pounds, and you came up with 42. There'd be 17 pounds missing somewhere, correct?

A Uh huh.

Q Okay. In a bag with some towels and stuff I don't expect that weighs more than five pounds or so. So, we're look-

ing at probably a loss of maybe 12 pounds. Would that be possible through evaporation as Detective Humphries suggested to this jury in a matter of 38 days?

A Not through evaporation. Probably not.

Larsen did not make any statements regarding the weight of the bags and other personal items contained in the evidence box, as distinct from the weight of the marijuana.

All three officers involved in the seizure of the contraband in question testified at trial that State's Exhibits 1 and 2 were photographs of the two duffel bags containing four bundles of marijuana, discovered in the trunk of appellant's car. Detective King testified that he recognized the State's Exhibits 3-10, photographs of the bundles of marijuana. However, he also explained that the bundles appeared different in the exhibits than when they were stored because when

you send dope to the Crime Lab, we don't separate the bundles. We leave the bundles intact inside the bag. The Crime Lab cuts the bundles open, takes the dope out, weighs the dope, and then puts 'em back in different bags.

Detective Humphries testified, with respect to Exhibits 3-10, that he recognized them as showing the marijuana bundles seized in appellant's trunk. He also stated that

[a]s you can see where the packaging has been cut. When it's sent to the Crime Lab to be analyzed, these bundles were in this shape, but the packaging was sealed around them of this interior packaging. This outside plastic bag was not a part of it. That's how it was resealed, I believe, by the Crime Lab.

Humphries recognized the State's Exhibit 12 as the loose marijuana and four hand-rolled marijuana cigarettes he had found in one of the bags' pockets.

The trial court stated, when ruling on appellant's objection, that

the whereabouts of [the evidence] at all times or every person who handled it is not necessary for introduction. Second of all, the testimony is in this case that it is less than what they said it was weighed at, but there is some explanations in the record as to the difference in it. In addition, there's no evidence of any actual

tampering of the matter, other than the difference of this weight which has been, testimony has been given an explanation of it.

From the resulting conviction appellant now brings as the sole point on appeal his challenge to the chain of custody, based on the weight discrepancy[1].

### Chain-of-Custody Challenge Based on Weight Discrepancy

Appellant challenges the sufficiency of the chain of custody solely on the basis of a weight discrepancy between the police report and the state crime laboratory report. We do not reverse a trial court's ruling on the admissibility of evidence absent a showing that it clearly abused its discretion. *Rankin v. State*, 57 Ark. App. 125, 942 S.W.2d 867 (1997). The purpose of establishing a chain of custody is to prevent the introduction of physical evidence that has been tampered with or is not authentic. *Newman v. State*, 327 Ark. 339, 939 S.W.2d 811 (1997). The trial court must be satisfied within a reasonable probability that the evidence has not been tampered with. *Id.* It is not necessary for the State to eliminate every possibility of tampering. *Id.* Minor uncertainties in the chain of custody are matters to be argued by counsel, but they do not render the evidence inadmissible as a matter of law. *Crisco v. State*, 328 Ark. 388, 943 S.W.2d 582 (1997).

In *Guydon v. State*, 344 Ark. 251, 257, 39 S.W.3d 767, 771 (2001), a case involving a very minor discrepancy, the supreme court stated that the "difference in testimony regarding the weight of State's Exhibit 1 was .1172 of a gram, and the difference regarding State's Exhibit 2 was .0817 of a gram." The *Guydon* court pointed out that the slight variation in the weight of the substance could have resulted from the differing sensitivity in the scales used by the officer and the chemist. *Id.*

In *Crisco v. State, supra*, relied upon by appellant, the supreme court reversed and remanded Crisco's conviction because of the

---

[1] Appellant did not include a copy of his notice of appeal in his addendum or abstract, as required under Ark. R. Sup. Ct. 4-2(a)(8) (2002). Only a review of the record reveals that appellant filed a notice of appeal on July 22, 2002. The judgment and commitment order was dated July 18, 2002, and filed July 25, 2002. Pursuant to Ark. R. App. P.—Crim. 2(b)(1) (2002), the appeal is thus timely, albeit not properly documented on appeal.

discrepancies in the officer's and the chemist's descriptions of the controlled substance involved. The officer described the substance as an "off-white powder," while the chemist described the drug as a "tan, rock-like substance." 328 Ark. at 389, 943 S.W.2d at 583. The State, in that case, argued that the officer's identification of the envelope containing the drug was sufficient. *Id.* The supreme court disagreed and held that the State had to do more to establish the authenticity of the drug tested than merely trace the route of the envelope containing the substance. *Id.*

In this case, we hold that the trial court did not abuse its discretion when it admitted the relevant exhibits concerning the marijuana seized in appellant's trunk. The existing discrepancy between the weights given by the police officers and the chemist admittedly is considerable, but the trial court also had before it testimony explaining the difference. The police weighed not only the marijuana, but the bags with all its contents, including some clothes, towels, and a cardboard box. While we would appreciate concrete information before us concerning how much the other items, such as the bags and towels, weighed, apart from the marijuana, we remain mindful of the fact that the State did not need to eliminate every possibility of tampering. *Newman v. State, supra.* The trial court merely had to be satisfied within a reasonable probability that no one had tampered with the evidence. *Id.*

Moreover, we point out that neither *Guydon v. State, supra,* nor *Crisco v. State, supra,* involve comparable facts. In *Guydon,* the police weighed the contraband itself, just as the crime laboratory did later, and the question on appeal essentially became whether the existing weight discrepancy could be explained satisfactorily by the use of different scales in the field and in the laboratory. In the present case, the police weighed everything together with the contraband, while the crime laboratory weighed only the contraband. Furthermore, in *Crisco,* the discrepancy was one of description, not weight. Here, we do not have any such discrepancy. Finally, the particular holding of *Crisco,* namely that the State had to do more to establish the authenticity of the drug tested than merely trace the route of the envelope containing the substance, upon which appellant seems to rely, does not avail him of any relief because the State did do more.

■ Specifically, the trial court had available the testimony of Detective Humphries who inventoried the bags, sealed the cardboard box containing all the items seized, and locked the evidence up until it was moved to the state crime lab. The chemist testified that the cardboard box was sealed when he picked it up from the laboratory's evidence locker. The trial court also heard testimony to the effect that the police, when inventorying bags containing marijuana bundles, customarily do not open marijuana bundles. Based on the record before us, we are unable to hold that the trial court abused its discretion. Thus, we affirm.

Affirmed.

VAUGHT and CRABTREE, JJ., agree.