John GARNER *v.* STATE of Arkansas

CA CR 02-1010                                             122 S.W.3d 24

Court of Appeals of Arkansas
Divisions II, III, and IV
Opinion delivered June 18, 2003

[Petition for rehearing denied July 30, 2003.]

498

500

*McDaniel & Wells, P.A.*, by: *Bill Stanley*, for appellant.

*Mike Bebee*, Att'y Gen., by: *Clayton K. Hodges*, Ass't Att'y Gen., for appellee.

LARRY D. VAUGHT, Judge. A jury found appellant guilty of possession of methamphetamine with intent to deliver, possession of drug paraphernalia, and fleeing in a motor vehicle. He was sentenced to forty years in prison for possession of methamphetamine, ten years in prison and a $10,000 fine for possession of drug paraphernalia, and six years in prison and a $10,000 fine for fleeing. The prison terms and fines were to run concurrently. He raises five points of appeal. We find no merit in these points and affirm.

On June 3, 2001, Shirley Spencer made a 911 call to the Greene County Sheriff's Department indicating a suspicious vehicle and person outside her residence on County Road 632 in Greene County. Deputies subsequently stopped appellant John Garner in a vehicle matching the description given to them by Ms. Spencer. Appellant gave his consent to search his vehicle and his person, but the deputies found nothing illegal. The deputies then returned to Ms. Spencer's residence to speak with her. They searched the roadway where the suspicious vehicle and person were earlier seen. The deputies found nothing in the area where the person had been seen, but upon searching an area about fifty feet north of the area identified by Ms. Spencer, deputies found a Bushnell, extra-wide binoculars case that contained approximately eighty grams of methamphetamine, various drug paraphernalia, and a letter from James Garner to Chris Garner, who are appellant's brothers. No fingerprints were obtained from the case, but the deputies recalled seeing a pair of Bushnell, extra-wide binoculars during the earlier search of appellant's car.

Green County deputies conducted a cursory search for appellant and, when he could not be located, returned to an area near Ms. Spencer's residence. Approximately three and a half hours later, a motorcycle approached the location where the deputies were sitting at the intersection of County Road 632 and Sunset Avenue, which was approximately one-half mile from Ms. Spencer's residence. After running a stop sign and upon seeing the deputies, the driver of the motorcycle began to flee. The deputies pursued the motorcycle ways until the it crashed, throwing passenger Max Burrow from the motorcycle. Burrow was apprehended, and the driver fled on foot. Deputy Matt Ring identified appellant as the driver,

although Burrow stated that Charles Chamberlain was the driver. Two days later, appellant was arrested and charged with possession of methamphetamine with intent to deliver, possession of drug paraphernalia, and fleeing in a vehicle.

Trial was scheduled for March 27, 2002. Deputy Ring appeared at trial with an incident report and a flashlight he retrieved from the scene of the motorcycle crash that had not been previously disclosed to either the prosecution or the defense. Due to this evidence, the trial was continued. Appellant subsequently filed a motion to bifurcate the charges, which the trial court denied. Appellant also filed a motion in limine, which was denied, to prohibit the State from introducing the flashlight presented by Deputy Ring.

A four-day jury trial began on June 26, 2002. At the close of the State's case, appellant moved for a directed verdict on the issue of constructive possession, arguing that the State could not prove that the location of the contraband was such that it could be said to be under the dominion and control of appellant, or that it was found in a place immediately and exclusively accessible to appellant and subject to his control. A directed-verdict motion was also made on the fleeing charge on the basis that the testimony identifying appellant as the driver of the motorcycle was questionable. The trial court denied both appellant's initial motions and renewed motions.

Appellant also asked the court to instruct the jury on modified versions of AMCI 6404 (Possession of a Controlled Substance) and 6407 (Possession of a Controlled Substance with Intent to Deliver). The court denied the request, and the proposed instructions were proffered. A jury found appellant guilty of possession of methamphetamine with intent to deliver, possession of drug paraphernalia, and fleeing in a motor vehicle.

Appellant raises five points of appeal: (1) the trial court erred in denying appellant's motion for directed verdict on the issue of constructive possession; (2) the definition of constructive possession contained in the Arkansas Model Jury Instructions 2nd—Criminal is incomplete and therefore an erroneous statement of the law, and thus the trial court erred in failing to use appellant's

proffered instructions; (3) the failure of the trial court to bifurcate the charges for trial was erroneous; (4) the trial court erred in admitting the flashlight into evidence; (5) the sufficiency of the evidence does not support the conviction of appellant for fleeing in a motor vehicle.

For double jeopardy reasons, we first consider appellant's arguments that there was insufficient evidence to support his convictions. *See Atkinson v. State*, 347 Ark. 336, 64 S.W.3d 259 (2002); *Haynes v. State*, 346 Ark. 388, 58 S.W.3d 336 (2001). We disregard any alleged trial errors in determining the sufficiency question because to do otherwise could result in avoidance of the sufficiency argument by remanding for retrial on other grounds. *Rose v. State*, 72 Ark. App. 175, 35 S.W.3d 365 (2000).

### 1.   *Possession of Methamphetamine with Intent to Deliver and Possession of Drug Paraphernalia*

Appellant argues that the trial court erred in denying his motion for directed verdict for  possession of methamphetamine with intent to deliver and possession of drug paraphernalia because the proof of constructive possession was insufficient to support the convictions. A motion for a directed verdict is a challenge to the sufficiency of the evidence. *Mills v. State*, 351 Ark. 523, 95 S.W.3d (2003). The test for such motions is whether the verdict is supported by substantial evidence, direct or circumstantial. *Id.* Substantial evidence is evidence of sufficient certainty and precision to compel a conclusion one way or another and pass beyond mere suspicion or conjecture. *Id.* On appeal, we review the evidence in the light most favorable to the appellee and consider only the evidence that supports the verdict. *Id.*

In support of reversal, appellant cites *Hodge v. State*, 303 Ark. 375, 797 S.W.2d 432 (1990), in which the supreme court reversed a conviction for possession of methamphetamine with intent to deliver, holding that the circumstantial evidence of possession was insufficient to support the conviction. There, the court stated that proof of actual or physical possession is not required. *Id.* A person can be in constructive possession of contraband

when he either maintains control or a right to control. *Id.* The facts of *Hodge* are distinguishable from the present case.

In *Hodge*, the police were attempting to establish a drug case against Hodge. An informant wearing a police wire went to Hodge's house to buy methamphetamine. Hodge did not have any, but said he would get some from Bo and Belinda the following day. Police followed Hodge the next day when he stopped at a truck stop and met Bo and Belinda, who police recognized as persons previously arrested for running a drug lab. Bo got in the car with Hodge, and police subsequently turned on their lights, and a high-speed, sixteen-block chase through town ensued. After Hodge was arrested, a police officer retraced the route of the chase and found a Pringles can and two Ziplock bags containing methamphetamine, which were scattered twenty-five feet beyond an intersection where Hodge turned.

In its opinion, the supreme court discussed the requisite proof to establish constructive possession:

> We have established the requisite proof for constructive possession in a long line of cases concerning joint occupancy. Where contraband is discovered in jointly occupied premises, and there is no direct evidence that it belongs to a particular occupant, some additional factor must be present linking the accused to the contraband. The state must prove that the accused exercised care, control and management over the contraband. *See Parette v. State*, 301 Ark. 607, 786 S.W.2d 817 (1990); *Plotts v. State*, 297 Ark. 66, 759 S.W.2d 793 (1988); *Osborne v. State*, 278 Ark. 45, 643 S.W.2d 251 (1982). The same analysis applies here. Certainly, *where narcotics are found in an area entirely outside the control of the defendant and exposed to the public at large, the state must provide more definite factors linking the defendant to the contraband* than were provided here.

303 Ark. at 377-78, 797 S.W.2d at 434 (emphasis added).

The State's evidence linking Hodge was the taped conversation of the intended drug buy, the meeting of known drug dealers, and Hodge's fleeing. The evidence revealed no proof of exchange of contraband, no drugs or large amounts of money were found on Hodge, no one saw Hodge drop anything from the car, and the amount of drugs far exceeded the amount of the

intended buy. Further, the area of the chase was heavily traveled, and none of the fingerprints lifted matched Hodge's prints.

Unlike the facts in *Hodge*, we conclude that there are more definite factors linking appellant to the contraband sufficient to sustain the jury's verdict. Around midnight on June 4, 2001, Paragould Police Officer Nate Hergett followed a blue Chevy truck traveling north on County Road 632. He stated that he encountered the truck twice on County Road 632 about fifteen minutes apart, and both times the truck was traveling north as if it and the officer were traveling in circles. Officer Hergett testified that when he first encountered the truck it was being driven at a normal speed, but that the second time he thought it was being driven suspiciously. Shirley Spencer also observed a truck traveling up and down the road slowly, and she reported the suspicious vehicle to the Greene County Sheriff's office after it stopped on her property, a man exited the truck and walked towards her driveway and out in the bushes, shrubs, and weeds grown up on the side of the road. Ms. Spencer testified that she could not tell if the man was picking something up or putting something down. Officer Hergett then received the suspicious vehicle report, which met the description of appellant's truck and the truck that Officer Herget had recently encountered twice on County Road 632. The testimony further revealed that Ms. Spencer watched the truck leave her property and saw the sheriff deputies pull up behind it. When police stopped the truck and identified appellant as the driver, they noticed a pair of extra-wide Bushnell binoculars in his car, as well as a weedeater. Appellant was dirty and explained his presence in the area by saying that he was weed-eating a nearby property belonging to him. *See Alexander v. State*, 78 Ark. App. 56, 77 S.W.3d 544 (2002) (stating that the jury could consider an improbable explanation as evidence of his consciousness of guilty).

When police returned to Ms. Spencer's house, contraband was found near the road approximately fifty feet north of the area she identified, in a Bushnell, extra-wide binoculars case. There was also a letter in the case from one of appellant's brothers to the other brother, which referenced appellant. *See Pacee v. State*, 306 Ark. 563, 816 S.W.2d 563 (1991) (in affirming a joint-occupancy

case, the court recognized as a factor that the evidence revealed that the briefcase where the contraband was found contained records identifying appellant). Deputy Ring identified appellant as the driver of the motorcycle, which was returning to the area of Ms. Spencer's residence after he had been seen outside her house earlier that evening and after he had been stopped by deputies. The motorcycle belonged to appellant's brother, and the driver fled when he spotted the deputies. *See Alexander v. State, supra* (noting that flight following the commission of an offense is a factor that may be considered with other evidence in determining probable guilt). A flashlight that bore the initials J.G. was found at the scene of the motorcycle crash.

As stated previously, the supreme court in *Hodge* stated that "where narcotics are found in an area entirely outside the control of the defendant and are exposed to the public at large, the state must provide more definite factors linking the defendant to the contraband than were provided here." 303 Ark. at 377–78, 797 S.W.2d at 434. Circumstantial evidence provides the basis to support a conviction if it is consistent with the defendant's guilt and inconsistent with any other reasonable conclusion; this determination is a question of fact for the jury to decide. *Polk v. State,* 348 Ark. 446, 73 S.W.3d 609 (2002). The credibility of witnesses is an issue for the jury, and it is free to believe all or part of a witness's testimony and may resolve questions of conflicting testimony and inconsistent evidence. *Id.* On appeal, we will only disturb the jury's determination if the evidence did not meet the required standards, thereby leaving the jury to resort to speculation and conjecture in reaching its verdict. *Id.* Based on the circumstantial evidence set out above, we conclude that there were enough factors linking appellant to the contraband for the jury to conclude, without resort to speculation and conjecture, that appellant constructively possessed the contraband.

### 2. Fleeing

Arkansas Code Annotated section 5-54-125 (Repl. 1997) defines the offense of fleeing as follows:

If a person knows that his immediate arrest or detention is being attempted by a duly authorized law enforcement officer, it is the lawful duty of such person to refrain from fleeing, either on foot or by means of any vehicle or conveyance.

For his motion for directed verdict, appellant argued that the testimony identifying appellant as the driver of the motorcycle was "questionable at best." His counsel specifically stated that:

Matt Ring says he can make identification out of John Garner, even though Garner's face was behind the headlights and he broke to the right when he saw police cars. Deputy Ring has testified that he turned his headlights on and [identifies] Garner in that split second on the road. We'd [sic] move for directed verdict to say that [the] State hadn't chinned their pole that he was fleeing from them at the time.

Appellant only challenges the credibility of Deputy Ring's testimony. On appeal, this court does not weigh the evidence presented at trial, as that is a matter for the fact-finder; nor do we assess the credibility of the witnesses. *Howell v. State*, 350 Ark. 552, 89 S.W.3d 343 (2002). We conclude that there is substantial evidence to support the conviction.

### 3. Jury Instructions

Appellant next argues that the definition of constructive possession contained in the Arkansas Model Jury Instructions 2nd—Criminal is incomplete and therefore an erroneous statement of the law, and thus the trial court erred in failing to use the instructions proffered by appellant. At trial, appellant objected to the State's use of AMCI 6404 and 6407. Both of these instructions include the following definition of constructive possession:

There are two kinds of possession, actual and constructive. Actual possession of a thing is direct physical control over it. Constructive possession exists when a person, although not in actual physical possession of a thing, has the right to control it and intends to do so, either directly or through another person.

Counsel argued that the definition of constructive possession misstated the law because it does not take into consideration all factors necessary for constructive possession. Specifically, appellant

argued that the instructions should include language taken from case law that "constructive possession may be implied when the contraband is found in a place immediately and exclusively accessible to the accused and subject to his control."

The following definition of constructive possession is contained in appellant's proffered instructions:

> There are two kinds of possession, actual and constructive. Actual possession of a thing is direct physical control over it. Constructive possession may be implied where the contraband is found in a place immediately and exclusively accessible to the accused, and subject to his control.

This definition is incomplete because it fails to include the definition of constructive possession contained in the AMCI, which is "Constructive possession exists when a person, although not in actual physical possession of a thing, has the right to control it and intends to do so, either directly or through another person."

Appellant is attempting to substitute an example of constructive possession for the definition of constructive possession. The appellate courts have held that one way that constructive possession (control or right to control) may be implied is when the contraband is found in a place immediately and exclusively accessible to the accused and subject to his control. While this example is applicable in enclosed areas, such as houses or vehicles, it would have no applicability to contraband found in open spaces that are accessible to the public as described in *Hodge v. State, supra*.

In addition, the supreme court has consistently recognized that a trial court is required to give a model instruction unless it finds that the instruction does not accurately state the law. *McCoy v. State*, 348 Ark. 239, 74 S.W.3d 599 (2002) (citing *In Re: Arkansas Model Criminal Instructions*, 264 Ark. Appx. 967 (1979) (per curiam)). These holdings have created a presumption that the model instruction is a correct statement of the law. It has been said that a non-model jury instruction should not be given unless the model instruction does not accurately reflect the law. *McCoy v. State, supra*. Any party who wishes to challenge the accuracy of a model instruction, be it the State or a defendant, must rebut the

presumption of correctness. *Id.* In *Holloway v. State*, 293 Ark. 438, 738 S.W.2d 796 (1987), the supreme court addressed two challenges, although different from the argument in the present case, to the wording of the AMCI instruction defining constructive possession. In affirming the trial court's use of the AMCI, the court generally stated "we hold the AMCI wording describing constructive possession to be sufficient."

Because the supreme court has found the AMCI wording of constructive possession to be sufficient and the appellant proffered incomplete instructions, we cannot say that the trial court erred in refusing to give the proffered instructions.

### 4. *Denial of Motion to Bifurcate*

Appellant next argues that the trial court erred in failing to bifurcate the possession charges from the fleeing charge. The supreme court has explained that the decision to sever offenses is discretionary with the trial court. *Kemp v. State*, 348 Ark. 750, 74 S.W.3d 224 (2002); *see also* Ark. R. Crim. P. Rule 21.1. A trial court's denial of a motion to sever will be affirmed if the offenses at issue were part of a single scheme or plan or if the same body of evidence would be offered to prove each offense. *Id.* Two or more criminal offenses are based on a series of acts connected together when the offenses occurred close together in time and place. *Gillie v. State*, 305 Ark. 296, 808 S.W.2d 320 (1991).

Appellant specifically contends that the fleeing offense had nothing to do with the determination of whether he possessed contraband. We disagree and cannot say that the trial court abused its discretion in denying the motion to sever.

Deputy Ring identified appellant as the driver of the motorcycle, which was returning to the area of Ms. Spencer's residence approximately three and a half hours after appellant had been seen in her yard and after deputies had found the binoculars case containing the contraband near Ms. Spencer's home. Deputies had seen a pair of binoculars that would fit the case found when they stopped appellant earlier after Ms. Spencer reported the suspicious activity. The testimony revealed that appellant began to flee when he spotted the deputies. The three-hour lapse in time

between the fleeing and appellant's presence on Ms. Spencer's property and the finding of the contraband does not alone negate a single scheme or plan. Rather, the proximity in time and place of the crimes provides a basis for the denial of severance. *See Brown v. State*, 304 Ark. 98, 800 S.W.2d 424 (1990). Additionally, some of the State's proof was pertinent to both crimes. The State was using the evidence of appellant's return to the property by motorcycle and subsequent fleeing as circumstantial evidence of appellant's possession of contraband.

### 5. Admission of the Flashlight

For his final argument, appellant contends that the trial court erred in admitting the flashlight that was recovered from the motorcycle crash site and bore his initials, which are the same as one of his brothers. Deputy Ring first presented the flashlight and an incident report on the date that the trial was originally set; the trial court continued the case because neither appellant nor the State were aware of the evidence. Appellant then filed a motion in limine prior to trial to prohibit the introduction of the flashlight on the basis that it lacked authenticity and that the State could not establish a proper chain of custody, which was denied by the trial court.

In *Guydon v. State*, 344 Ark. 251, 255, 39 S.W.3d 767, 769-70 (2001), the supreme court addressed the purpose of establishing chain of custody:

> We have consistently stated that the purpose of establishing a chain of custody is to prevent the introduction of evidence that is not authentic or that has been tampered with. *Newman v. State*, 327 Ark. 339, 939 S.W.2d 811 (1997). To prove authenticity of evidence the State must demonstrate a reasonable probability that the evidence has not been altered in any significant manner. *Gomez v. State*, 305 Ark. 496, 809 S.W.2d 809 (1991). To allow introduction of physical evidence, it is not necessary that every moment from the time the evidence comes into the possession of a law enforcement agency until it is introduced at trial be accounted for by every person who could have conceivably come in contact with the evidence during that period. *Id.* Nor is it necessary that every possibility of tampering be eliminated; it is only necessary that the trial judge, in his discretion, be satisfied

that the evidence presented is genuine and, in reasonable probability, has not been tampered with. *Id.* On review, we will not reverse a ruling on an evidentiary matter regarding the admissibility of evidence absent an abuse of discretion because such matters are left to the sound discretion of the trial court. *See Newman, supra.*

It is appellant's assertion that the flashlight was not found at the scene of the motorcycle crash. Instead, he suggests that Deputy Ring obtained the flashlight from a prior arrest of appellant or his brother. His argument is based on the following: (1) the flashlight was not disclosed to either side until the day the case was originally set for trial; (2) Deputy Ring failed to turn the flashlight over to Investigator Martin and instead placed it in his own evidence locker; (3) none of the other officers' reports mention a flashlight; and (4) all of the other officers' reports are typed except Deputy Ring's.

At trial, Deputy Ring testified that he found the flashlight at the scene of the motorcycle crash, seized it at the crash site, and kept it in his personal evidence locker until trial. He added that it was in substantially the same condition as it was when he found it. In explaining his failure to disclose the flashlight earlier, he testified that he had only been on the job four months and that he thought the fleeing incident was a separate incident, and based on this, he filled out a separate report which he did not give to Investigator Martin, who was the drug investigator.

Appellant's argument that the flashlight is not authentic goes to the credibility of Deputy Ring's testimony and the weight to be accorded to it. However, the appellate court does not weigh the evidence presented at trial or weigh the credibility of witnesses, as these are matters to be resolved by the finder of fact. *Lenoir v. State*, 77 Ark. App. 250, 72 S.W.3d 899 (2002). Therefore, we cannot say that the trial court erred in admitting the flashlight into evidence.

Affirmed.

STROUD, C.J., PITTMAN, CRABTREE, and ROAF, JJ., agree.

HART, BIRD, GRIFFEN, and BAKER, JJ., dissent.

WENDELL L. GRIFFEN, Judge, dissenting. The majority employs the correct legal standard but reaches the wrong result in this criminal appeal involving whether the State's circumstantial proof was sufficient to support the jury verdict convicting appellant of possession of methamphetamine with intent to deliver and possession of drug paraphernalia. Because I believe that the result announced today directly violates the standard prescribed by our supreme court in *Hodge v. State*, 303 Ark. 375, 797 S.W.2d 432 (1990), I must respectfully dissent.

I agree with the majority that the *Hodge* standard governs our analysis. In that case, our supreme court reversed and dismissed the conviction of a man who was convicted of possession with intent to deliver methamphetamine and sentenced to life imprisonment plus a fine of $50,000. The conviction in *Hodge* was overturned despite evidence far more incriminating than anything or everything in this record. Undercover police established surveillance of Hodge with the cooperation of a person previously arrested for selling narcotics and who arranged to meet Hodge on a given date and time to consummate a drug sale. Thereafter, the police followed Hodge to the parking lot of an Oklahoma truck stop where he met his suppliers, who the police recognized as a couple previously arrested for running a drug lab. Hodge left that meeting with one of the suppliers riding in his car and returned to Arkansas, where awaiting police signaled for him to stop his car. Instead, Hodge commenced a high-speed sixteen-block flight through Fort Smith, which resulted in his capture and arrest. A search of his vehicle and his person revealed no contraband (although his passenger had a small amount of marijuana in her purse). After Hodge was incarcerated, a police officer retraced the chase route. Halfway along the route and scattered up to twenty-five feet beyond an intersection where Hodge had turned, the police officer found an empty "Pringles" potato chip can and two "Ziploc" bags that contained a total of what was later identified as almost two ounces of methamphetamine.

Despite this proof, the supreme court concluded that the evidence was insufficient and "that the jury could not have reached its guilty verdict without resorting to suspicion and conjecture." *Id.* at 377, 797 S.W.2d at 435. The *Hodge* majority opinion, writ-

ten by Chief Justice Jack Holt, Jr., is unmistakably clear about the standard for testing the sufficiency of evidence in criminal prosecutions based on constructive possession such as the one before us, as follows:

> Where contraband is discovered in jointly occupied premises, and there is no direct evidence that it belongs to a particular occupant, some additional factor must be present linking the accused to the contraband. The state must prove that the accused exercised care, control and management over the contraband. *Certainly, where narcotics are found in an area entirely outside the control of the defendant and exposed to the public at large, the state must provide more definite factors linking the defendant to the contraband than were provided here.*
>
> . . . .
>
> Constructive possession may be established by circumstantial evidence, but when such evidence alone is relied on for conviction, it must indicate guilt and exclude every other reasonable hypothesis. The state's evidence of constructive possession in this case is, in fact, entirely circumstantial. Although it impels the strong suspicion that Hodge was in possession of the contraband, the question is whether such a suspicion is sufficient enough to support a conviction.
>
> . . . .
>
> We hold that the circumstantial evidence was insufficient to convict Hodge of possession with intent to deliver methamphetamine. "No one should be deprived of his liberty or property on mere suspicion or conjecture. Where inferences are relied upon, they should point to guilt so clearly that any other conclusion would be insufficient. This is so regardless of how suspicious the circumstances are."

303 Ark. at 378-379, 797 S.W.2d at 434-435 (emphasis added) (citations omitted).

I see no reason why the proof in the present case justifies a result different from that reached in *Hodge*. Here, the proof is entirely circumstantial; there is no direct proof that Garner ever possessed, or was even intended to possess, the contraband that the police found in an open area near the residence of Shirley Spencer. Spencer never identified Garner as the person she observed

walking into the bushes near her house; in fact, she could not identify the person she saw outside her house. Nothing was found in the area that Spencer directed the police to search off the roadway where she had observed the unidentified man walking, even though the police found a Bushnell extra-wide binoculars case that contained almost eighty grams of methamphetamine approximately fifty feet north of the place Spencer had observed the suspicious person. The binoculars case also contained drug paraphernalia and a letter from James Garner to Chris Garner, appellant's brothers. That letter did not mention the contraband, let alone link appellant to it.

The conviction in this case could have occurred only after the jury, having no direct evidence that appellant ever possessed the contraband, surmised that the unclaimed contraband found near Spencer's house in an open area must have belonged to appellant because he was in the area, owned a set of binoculars similar to the case in which the contraband was found, fled from the police when they pursued him, had the same initials (J.G.) as those found on a flashlight found near the open area, and was named in a letter written by one of his brothers to another brother. That proof might create suspicion of guilt, but it certainly does not exclude every other reasonable hypothesis inconsistent with guilt. Appellant had no contraband on his person or in his truck when the police stopped him. He told the police he had been cutting weeds on his own property which was located in the vicinity.[1] No fingerprints or other indicia of ownership appeared on the binoculars case to link appellant to the case, let alone its contents. The initials found on the flashlight ("J.G.") also fit appellant's brother (James Garner), who wrote the letter found in the binocular case. If "more definite factors linking the defendant to the contraband" were needed in *Hodge* to warrant affirmance, and if the supreme court reversed the conviction and sentence in that case because "more definite factors" were absent, we should not reach a different result on the less incriminating record before us.

---

[1] The police stated that a weedeater was found in appellant's vehicle and that appellant appeared dirty.

The effect of today's decision is troubling. The State has the burden of proving every element of a criminal charge beyond a reasonable doubt. Conviction on the charge of possession of a controlled substance with intent to deliver requires, in the first instance, proof beyond a reasonable doubt that the accused possessed a controlled substance. Although circumstantial evidence of constructive possession can be established according to the *Hodge* standard, the decision today weakens that standard so that the State can obtain a conviction based on sheer suspicion. As the supreme court said in *Ravellette v. State*, 264 Ark. 344, 346, 571 S.W.2d 433, 434 (1978), "No one should be deprived of his liberty or property on mere suspicion or conjecture. . . . This is so regardless of how suspicious the circumstances are."

I respectfully dissent, and am authorized to state that Judges HART, BIRD, and BAKER join this opinion.