

# ARKANSAS COURT OF APPEALS

DIVISION II
No.  CV-13-1077

CLYDE RAY KING and EILEEN
MCMURRAY
                    APPELLANTS

V.

STATE OF ARKANSAS
                    APPELLEE

**Opinion Delivered** October 22, 2014

APPEAL FROM THE PULASKI
COUNTY CIRCUIT COURT,
SECOND DIVISION
[NO. CV2012-3795]

HONORABLE CHRISTOPHER
CHARLES PIAZZA, JUDGE

AFFIRMED

## BILL H. WALMSLEY, Judge

Appellants Clyde King and Eileen McMurray appeal from the Pulaski County Circuit Court's order granting the State's petition for forfeiture with respect to two vehicles. Appellants argue that there was insufficient evidence to support forfeiture of either vehicle and that the trial court failed to exercise its discretion in ordering forfeiture. We affirm.

Arkansas Code Annotated section 5-64-505(a) (Supp. 2011) provides that items subject to forfeiture include a conveyance, such as a vehicle, that is used or intended for use to transport or in any manner to facilitate the transportation for the purpose of sale or receipt of property described in subdivisions (a)(1) or (2) of this section. Subdivision (a)(1) is any controlled substance that has been manufactured, distributed, dispensed, or acquired in violation of this chapter.

At the forfeiture proceedings, Investigator Mike Brooks with the North Little Rock

Police Department testified that he investigated a complaint that King was selling prescription medication. Brooks testified that he arranged to meet King for a drug purchase on May 8, 2012, and that King arrived in a BMW that "turned out to be a 2003 BMW that was subsequently seized." King sold Brooks 10 oxycodone pills for $300. Brooks testified that at another drug purchase on May 16, 2012, King arrived in an '80s model Cadillac and sold him 10 oxycodone pills for $280. Brooks arranged for a third meeting to buy more oxycodone. King arrived in the Cadillac and was arrested. Officers found forty-six oxycodone pills and fourteen methadone pills in King's possession. In an interview with police, King admitted selling prescription drugs for a profit. According to King, he used a small number of the pills and sold the rest. King also told police that he owned the Cadillac and the BMW and that he allowed his girlfriend, Eileen McMurray, to drive the BMW.

King testified that he is a disabled veteran suffering from PTSD, degenerative-disc disease, and other ailments. King asserted that he had a valid prescription for oxycodone and methadone from two doctors. King testified that he was in a vulnerable state when Brooks contacted him to arrange a drug purchase in that his mother had suffered a stroke and needed money for medication and admission to a nursing home. After his cars were seized, King could no longer visit his mother nor could he receive treatment for his service-connected disabilities. King testified that he bought the BMW with his VA back pay and that he considered it to be McMurray's car. He stated that he had driven the BMW at times but that McMurray knew nothing about the drug transactions.

McMurray testified that she had been friends with King for six or seven years and that

hearing about King's arrest "was enough to flip [her] wig." McMurray stated that King had bought the BMW for her and that she drove it to her workplace and to church, used it to make house calls in connection with her job as a counselor, and needed the car to perform community service. McMurray testified that buying another vehicle would put a financial strain on her.

Forfeiture is an in rem civil proceeding, independent of any pending criminal charge, to be decided by a preponderance of the evidence. *Ridenhour v. State*, 98 Ark. App. 116, 250 S.W.3d 566 (2007). Because the forfeiture statute is penal in nature, and forfeitures are not favorites of the law, the statute is construed narrowly on appeal. *Id*. The trial court's decision granting forfeiture will not be set aside unless it is clearly erroneous. *Id*. A trial court's decision is clearly erroneous when, although there is evidence to support it, the appellate court, after reviewing the entire evidence, is left with a definite and firm conviction that a mistake has been made. *Id*.

Appellants make several arguments challenging the sufficiency of the evidence. First, they argue that the drugs in question were legally dispensed to and acquired by King through a valid prescription from his doctors. Giving effect to the intent of the legislature, we hold that, although King legally obtained the controlled substances, what he did with them thereafter was in violation of Ark. Code Ann. § 5-64-308 (Supp. 2011), which provides that, except when dispensed by a practitioner to an ultimate user, no controlled substance in Schedule II may be dispensed without a written prescription.

Second, appellants contend that the State offered no evidence that oxycodone and

3

methadone are controlled substances.[1] The Arkansas Department of Health has a list of controlled substances on a state website indicating that oxycodone and methadone are Schedule II controlled substances. List of Controlled Substances For the State of Arkansas, Ark. Reg. (Oct. 2014) (available at http://www.healthy.arkansas.gov/about ADH/Rules Regs/controlled_substances_list.pdf. In a recent case, *Brown v. State*, 2014 Ark. App. 474, this court cited an Arkansas Supreme Court case, *Washington v. State*, 319 Ark. 583, 892 S.W.2d 505 (1995), which held that courts may take judicial notice of state–agency regulations classifying controlled substances into particular schedules. Therefore, the State did not have to offer proof that oxycodone and methadone are controlled substances.

Third, appellants contend that Brooks failed to adequately identify the BMW. Fewer than two months had elapsed between the time Brooks saw King driving the BMW and when the car was seized. Brooks did an ACIC check of the vehicle that was seized, and it was registered to King or McMurray. Because there was no evidence that King owned a fleet of BMWs, it would be quite a coincidence for King to have been selling controlled substances from a different BMW than the one seized.

Appellants' fourth and fifth arguments will be addressed together because they pertain to the State's exhibits, consisting of three lab reports. Appellants argue that the State offered no testimony regarding the chain of custody for the drugs; Brooks did not bring the drugs to court; and two of the lab reports do not identify King as the suspect. These arguments are not challenges to the sufficiency of the evidence. Rather, they involve evidentiary matters that

---

[1]King pleaded guilty to possession of a controlled substance with intent to deliver.

required a contemporaneous objection to preserve an argument for appeal. *See, e.g., Hunter v. State*, 330 Ark. 198, 952 S.W.2d 145 (1997). Appellants raised no objection when Brooks testified that the lab-report numbers matched in terms of what he submitted for analysis and what he received back from the lab.[2] Therefore, this court will not address these arguments.

Next, appellants argue that forfeiture of both cars was "grossly unfair" to them and that the judge had discretion, after considering the equities, to permit them to keep the cars. Appellants cite *Bennis v. Michigan*, 516 U.S. 442 (1996), for the proposition that a trial judge has discretion in determining whether to order forfeiture. The case contains a quote by the Michigan Supreme Court that forfeiture was an equitable action in which a trial judge has discretion to consider alternatives to abating the entire interest in a vehicle. *Id.* at 452. The *Bennis* court held that a wife was not entitled to assert the innocent-owner defense to contest the abatement of a car by showing that she did not know her husband would use the car to violate Michigan's indecency law. *Bennis* is inapplicable here.

In their reply brief, appellants cite Ark. Code Ann. § 5-64-505(a)(4)(B) (Supp. 2011) as an exception to forfeiture; however, because this argument was raised for the first time in appellants' reply brief, we do not consider it. *Hinton v. State*, 2010 Ark. App. 341. Even if this court addressed the argument, it is unavailing.

In *Carter v. State*, 2009 Ark. App. 342, 309 S.W.3d 210, this court upheld the forfeiture of a vehicle titled to a mother or her son because either owner could transfer title

---

[2]The purpose of establishing a chain of custody is to prevent the introduction of evidence that has been tampered with or is not authentic. *Jones v. State*, 82 Ark. App. 229, 105 S.W.3d 835 (2003).

SLIP OPINION

and divest the other's interest without his or her consent. In *Carter*, the parties stipulated to the son's use of the vehicle in committing burglary and theft, and the son's actions divested his mother's interest in the vehicle "as surely as if he had sold it." *Id*. at 3. The same reasoning applies here. *See also Macon v. State*, 2011 Ark. App. 371, 309 S.W.3d at 212 (upholding forfeiture of vehicle titled to mother or son because son's consent to forfeiture was sufficient to divest mother's interest in vehicle). Even though McMurray's name was on the title of the BMW and she was unaware that King had used the vehicle to sell controlled substances, King's actions were sufficient to divest McMurray's interest in the BMW under the forfeiture statute.

Affirmed.

PITTMAN and HIXSON, JJ., agree.

*Steven R. Davis*, for appellant.

*Dustin McDaniel*, Att'y Gen., by: *Karen Virginia Wallace*, Ass't Att'y Gen., for appellee.