375 Ark. 394

**Linda STOKES, Appellant,**

v.

**STATE of Arkansas, Appellee.**

No. CR 08–86.

Supreme Court of Arkansas.

Jan. 22, 2009.

Matthew Lunde, North Little Rock, for appellant.

Dustin McDaniel, Att'y Gen., by Vada Berger, Ass't Att'y Gen., for appellee.

JIM GUNTER, Justice.

This appeal arises from a decision of the Conway County Circuit Court denying Appellant Linda Stokes's motion to suppress. We reverse and remand.

On July 31, 2007, Appellant and a passenger, Amy Howard, were traveling along Interstate 40 when Officer Eric Lee noticed that the vehicle was traveling below the speed limit at 60 miles per hour. Officer Lee testified that once he got behind the vehicle, it made a hasty exit off of the interstate into Plumerville. Officer Lee could see Appellant and the passenger watching him out of the mirrors. According to Lee, "the vehicle turned left and went North on Highway 92 to Plumerville." He followed the vehicle and it eventually came to a complete stop in the road. He testified that it seemed like they were looking for a place to turn, which piqued his interest. The vehicle continued on Highway 92 and turned left on Ballpark Road. Lee's interest was piqued again because Ballpark Road is an all-black neighborhood with a dead-end street and the occupants of the vehicle were two white females. He ran the vehicle's tag, and discovered that it was registered in Arizona. He continued down Highway 92 past Ballpark Road and observed in his mirror that the vehicle was backing down Ballpark Road. He turned around and the vehicle began driving down the road again. Lee then got behind the vehicle and initiated a traffic stop.

Lee testified that he stopped Appellant's vehicle for careless driving because the vehicle had backed down a city street. When Lee approached the vehicle, he observed that Appellant was "visibly shaking" and did not have identification on her. She told Lee that she did not have identifi-

cation because her license was suspended. Lee returned to his vehicle and discovered that Appellant had a suspended driver's license out of Arizona and an expired license out of California. Lee then approached the vehicle again and asked Appellant to step out of the vehicle. He began asking her questions about where they were going and what they were doing in the area. He also asked Howard questions and testified that "the stories they were giving me were not matching up and I didn't feel comfortable with both of them out there at that point." He placed Appellant under arrest for driving on a suspended license. As he was placing her in the back of his car, he asked her if they were transporting anything illegal. He testified that Appellant would not make eye contact with him and looked away when he asked her if there were any drugs in the car. He then began speaking to Howard, who had the same reaction as Appellant.

Lee called a tow truck to tow the vehicle because neither Appellant nor Howard had driver's licenses. Another officer arrived and contacted the rental company about the vehicle. According to the rental company, the vehicle was not supposed to be taken out of Arizona, and neither Appellant nor Howard was listed as the actual renter of the vehicle. Lee then conducted an inventory of the vehicle and found marijuana in the trunk. Lee did not issue a citation for careless driving.

Appellant was charged with possession of marijuana with intent to deliver. On September 13, 2007, Appellant filed a motion to suppress the evidence found in the rental vehicle. The circuit court denied the motion to suppress. Appellant entered a guilty plea conditioned on the appeal of the motion to suppress. Appellant now brings this appeal.

This case was certified to us from the Arkansas Court of Appeals because it involves a perceived inconsistency in the decisions of the Arkansas Supreme Court, issues needing clarification or development of the law or overruling of precedent, and issues of substantial public interest pursuant to Arkansas Supreme Court Rule 1–2(b)(2), (4), and (5) (2008).

For her sole point on appeal, Appellant asserts that the circuit court erred in denying Appellant's motion to suppress. Specifically, Appellant contends that (1) the evidence was obtained during an unlawful stop of Appellant's vehicle and (2) even if there was probable cause to initiate the traffic stop, "the evidence obtained as a result of Appellant's arrest for a misdemeanor, rather than the issuance of a summons, was in direct violation of Arkansas Rules of Criminal Procedure 7.1 and should be deemed fruit of the poisonous tree."

The State responds, asserting that Appellant lacks standing to challenge the suppression of the evidence. In the alternative, the State contends that (1) there was probable cause to initiate the traffic stop; (2) Appellant did not obtain a ruling regarding her argument that a summons was not issued for her arrest; (3) even if there were a ruling, Rule 7.1(b) has no application here; and (4) the circuit court correctly refused to suppress the evidence seized from the car because the marijuana would have inevitably been discovered through the inventory search even if there were no arrest.

In her reply brief, Appellant asserts that the State cannot raise its standing argument for the first time on appeal. In the alternative, Appellant contends that she does have standing, citing *Brendlin v. California*, 551 U.S. 249, 127 S.Ct. 2400, 168 L.Ed.2d 132 (2007).

In reviewing the denial of a motion to suppress evidence, this court con-

ducts a de novo review based upon the totality of the circumstances, reversing only if the circuit court's ruling is clearly against the preponderance of the evidence. *Koster v. State,* 374 Ark. 74, 286 S.W.3d 152 (2008). Issues regarding the credibility of witnesses testifying at a suppression hearing are within the province of the circuit court. *Id.* Any conflicts in the testimony are for the circuit court to resolve, as it is in a superior position to determine the credibility of the witnesses. *Id.*

## I. *Standing*

■ We must first address whether the State's standing argument can be raised for the first time on appeal. We have held that the issue of standing to challenge the legality of a search and seizure is not a jurisdictional issue that can be raised for the first time on appeal. *See State v. Houpt,* 302 Ark. 188, 788 S.W.2d 239 (1990). In *Houpt,* however, the State, as appellant, raised the issue of the appellee's standing to challenge the legality of a search and seizure in order to obtain a reversal. We have never held that an appellee cannot raise an issue for the first time on appeal in an effort to obtain an affirmance. *See Ramage v. State,* 61 Ark. App. 174, 966 S.W.2d 267 (1998). We have a long-standing rule that we may affirm the result reached by the trial court, if correct, even though the reason given by the trial court may have been wrong. *See Mamo Transp., Inc. v. Williams,* 375 Ark. 97, 289 S.W.3d 79 (2008). Here, the State is asking us to affirm the circuit court's denial of Appellant's motion to suppress, therefore, we hold that the State can raise the issue of standing for the first time on appeal.

■ We now turn to the issue of whether Appellant has standing to contest the legality of the search and seizure. We have held that an appellant must have standing to assert Fourth Amendment rights because those rights are personal in nature. *State v. Bowers,* 334 Ark. 447, 976 S.W.2d 379 (1998); *Dixon v. State,* 327 Ark. 105, 937 S.W.2d 642 (1997); *Littlepage v. State,* 314 Ark. 361, 863 S.W.2d 276 (1993). Whether an appellant has standing depends upon whether he manifested a subjective expectation of privacy in the area searched and whether society is prepared to recognized that expectation as reasonable. *Littlepage, supra.* In *Littlepage,* the appellant was driving a rental vehicle when he was stopped by police. We said that in order for the appellant to assert his Fourth Amendment rights, he must show that he gained possession from the owner or someone with authority to grant possession. *Id.* According to the rental agreement, the vehicle was rented to a third party, and neither Littlepage nor his passenger was authorized to use the vehicle. We held that the appellant had no standing to challenge the officer's search as unconstitutional because he had no expectation of privacy in the car. *Id.*

■ In *Bowers,* we held that the appellant who was a passenger in a vehicle had standing to contest the search of the vehicle after an illegal stop. None of the parties contested the fact that the initial stop was illegal. We distinguished *Bowers* from *Littlepage* and our other previous cases in that *Bowers* involved an illegal stop, and the search for and seizure of the drugs directly followed the stop. We said that the search on the heels of an illegal stop presents a different issue with respect to occupants of a vehicle. *Id.* (citing *Dixon v. State, supra*). "Similarly, the occupants of a vehicle have standing to assert their own Fourth Amendment rights, independent of the owner's, such as a challenge to the initial stop, or the seizure of their person." *Id.* (quoting *Dixon*).

Appellant relies on *Brendlin v. California*, 551 U.S. 249, 127 S.Ct. 2400, 168 L.Ed.2d 132 (2007), for her assertion that she has standing to challenge the legality of the stop. In *Brendlin*, officers stopped a car to check its registration without reason to believe that it was being operated unlawfully. The United States Supreme Court held that a passenger, like the driver, of an automobile that was pulled over by a police officer for a traffic stop was "seized" under the Fourth Amendment from the moment the automobile came to a halt on the roadside and, therefore, was entitled to challenge the constitutionality of the traffic stop. *Id.* Here, in determining whether Appellant was seized, the relevant inquiry is whether a reasonable person in Appellant's position when the car stopped would have believed herself free to "terminate the encounter" between the police and herself. *Brendlin*, 551 U.S. at 249, 127 S.Ct. 2400. Under the facts in this case, a reasonable person in Appellant's position would not have believed that she was free to terminate the encounter between Officer Lee and herself. Because Appellant was seized for Fourth Amendment purposes, she has standing to challenge the stop's constitutionality.

This case was certified to us because of a perceived inconsistency between our holding in *Littlepage* and the holdings in *Bowers* and *Brendlin*. There is no conflict between the decisions because the issue of standing as it relates to the seizure of a person was not an issue in *Littlepage*. Rather, the issue in *Littlepage* was whether the appellant had standing to challenge the search of a vehicle, which involved the seizure of *property* and the expectation of privacy. Because the issues related to standing in *Littlepage* and the issues related to standing in *Bowers* and *Brendlin* were different, we find no inconsistency in the decisions.

## II. Traffic Stop

Appellant asserts that the evidence obtained was the result of an illegal and unconstitutional traffic stop and should be deemed fruit of the poisonous tree. In order for a police officer to make a traffic stop, he must have probable cause to believe that the vehicle has violated a traffic law. *Sims v. State*, 356 Ark. 507, 157 S.W.3d 530 (2004); *Laime v. State*, 347 Ark. 142, 60 S.W.3d 464 (2001); *Travis v. State*, 331 Ark. 7, 959 S.W.2d 32 (1998). Probable cause is defined as "facts or circumstances within a police officer's knowledge that are sufficient to permit a person of reasonable caution to believe that an offense has been committed by the person suspected." *Burks v. State*, 362 Ark. 558, 210 S.W.3d 62 (2005). In assessing the existence of probable cause, our review is liberal rather than strict. *Laime, supra.* Whether a police officer has probable cause to make a traffic stop does not depend on whether the driver was actually guilty of the violation which the officer believed to have occurred. *Id.*

Here, Officer Lee testified that the vehicle driven by Appellant was driving 60 miles an hour, which was below the posted speed limit. The vehicle then made a "hasty exit" off the 112 off-ramp into Plumerville. Lee could see both Appellant and the passenger watching him though their mirrors. Lee said it looked like they were trying to decide which way to turn. After the vehicle turned, Lee followed the vehicle and it "almost made a complete stop in the road and again it looked like they were looking for a place to turn." The vehicle turned left on Ballpark Road. Lee said this piqued his interest because it was an all-black neighborhood and the occupants of the vehicle were two white women. Lee ran the tag on the vehicle and discovered it was from Arizona. He continued past Ballpark Road and ob-

served in his mirror that the vehicle was backing down Ballpark Road. When Lee turned his car around, the vehicle began driving back down the road. Lee then pulled the vehicle over.

Lee testified that he pulled the car over for careless driving. Arkansas Code Annotated § 27–51–104 (Supp.2007) covers careless and prohibited driving, stating in pertinent part:

(a) It shall be unlawful for any person to drive or operate any vehicle in such a careless manner as to evidence a failure to keep a proper lookout for other traffic, vehicular or otherwise, or in such a manner as to evidence a failure to maintain proper control on the public thoroughfares or private property in the State of Arkansas.

■ The State contends that Appellant violated subsection (a) because she operated the vehicle "in such a careless manner as to evidence a failure to keep a proper lookout for other traffic, vehicular or otherwise" by driving her car in reverse down the street. With regard to whether backing down a street was careless, Officer Lee testified, "I don't believe any cars were coming. There were no cars behind me. There is always a danger. In the absence of any other vehicles around I wouldn't say there necessarily was a danger." Based on Officer Lee's testimony that there were no other vehicles around, and there was not "necessarily a danger," we cannot say that the facts or circumstances within the officer's knowledge were sufficient to permit a person of reasonable caution to believe that Appellant failed to keep a proper lookout for other traffic by backing down the road.

■ The State contends that, even if Lee did not have probable cause to stop Appellant for careless driving, he did have probable cause to stop her for violating Ark.Code Ann. § 27–51–1309(a) (Supp.

2007), which provides that "[t]he driver of a vehicle shall not back a vehicle upon any roadway, unless the movement can be made with reasonable safety and without interfering with traffic." Once again, we cannot say that the facts within the officer's knowledge were sufficient to permit a person of reasonable caution to believe that the vehicle could not be backed down the road "with reasonable safety and without interfering with traffic."

Accordingly, we hold that there was no probable cause to believe that Appellant was committing a traffic violation and that the circuit court therefore clearly erred in denying the motion to suppress. We therefore reverse and remand. In view of our holding that there was no probable cause to make the stop, we need not address Appellant's remaining arguments.

Reversed and remanded.