2010 Ark. App. 359

**Derric JACKSON, Appellant**

v.

**STATE of Arkansas, Appellee.**

**No. CA CR 09–881.**

Court of Appeals of Arkansas.

April 28, 2010.

Dale E. Adams, Esq. Montgomery, Adams & Wyatt, PLC, Little Rock, AR, for appellant.

Dustin McDaniel, Attorney General, Rachel M. Hurst, Assistant Attorney General, Little Rock, AR, for appellee.

ROBERT J. GLADWIN, Judge.

Appellant Derric Jackson appeals his conviction from the Pulaski County Circuit Court on a charge of possession of cocaine with intent to deliver, in violation of Arkansas Code Annotated section 5-64-401 (Repl.2005), a Class Y felony for which he was sentenced, as an habitual offender, to ten years' imprisonment in the Arkansas Department of Correction. On appeal, he argues that the circuit court erred by denying his motion to suppress evidence ob-

tained through an unlawful search and seizure and also that the circuit court abused its discretion by admitting the evidence over his chain-of-custody objection. We affirm.

### Facts

On July 26, 2007, the Street Narcotics Detail of the Little Rock Police Department received an anonymous complaint that narcotics were being sold in the 2300 block of West 11th Street. The complaint indicated that an African–American male named Corey Jackson [2]or Johnson had been released from prison and that he had been shot a couple of months ago during the execution of a search warrant. Further, the complaint suggested that several males were hanging around the Dennison and Thayer streets area and that people were afraid of them. The source of the complaint also stated that the suspects had been searched the previous week and had drugs hidden in "the cracks of their butts" and guns concealed under the hood of a car.

Detective Ryan Hudson and other officers initiated an undercover investigation pursuant to the complaint. Subsequently, several officers went to the area on August 28, 2007, and observed multiple suspects, including appellant, blocking the street in a manner that was consistent with the complaint. The undercover officers called in additional officers in marked patrol cars for reinforcement, rounded up the suspects, questioned them, and patted them down for weapons.

One of the suspects that was separated from the others, searched, and interviewed was an individual named Corey Jackson. He responded in the negative when he was asked whether he had drugs on him, and specifically, if he had them concealed in his buttocks area. Officers asked Jackson whether he minded if they checked; he said no; and he was searched with no drugs found. Evidence was presented that Jackson told detectives that Duron Canada and appellant both had dope in "the cracks of their butts."

Officers returned to talk to Canada and appellant, who previously had been placed in a patrol car, and both stated that they did not have dope on them and had already been checked. Officers specifically asked if they had dope in their buttocks, and they both [3]responded "no." Testimony from officers indicate that they asked for, and received, verbal consent to search their persons, but appellant disputes this assertion. Officers then pulled patrol cars around the two suspects, opened the doors to block the view of bystanders, and searched them again. There is conflicting evidence as to whether appellant was searched two or three more times, but ultimately, officers discovered and retrieved one gram of crack cocaine from Canada's buttocks area and fifteen grams from appellant's buttocks area. Five hundred and fifty four dollars was also discovered on appellant's person during the search, and the money was also seized.

A felony information was filed on November 15, 2007, charging appellant [1] with one count of possession of a controlled substance with intent to deliver, in violation of Arkansas Code Annotated section 5–64–401, subject to an habitual offender sentence enhancement pursuant to Arkansas Code Annotated section 5–4–501(b) (Repl.2006) for four or more prior felony convictions.

Prior to trial, on March 20, 2008, appellant filed a motion to suppress all the evidence obtained through the search, based upon violation of federal rights. A

---

1. Canada was also charged in the information.

hearing on the motion was held on April 28, 2008, at which time appellant argued that the search was an improper body-cavity search and that officers did not have reasonable suspicion to further detain him after they ran warrant checks and did a pat-down search, and that he did not freely and voluntarily consent to the search. After the hearing, the circuit court took the matter under ₄advisement. That motion was denied by the circuit court, pursuant to a letter order filed on May 5, 2008.

An amended motion to suppress was filed by substituted counsel on March 4, 2009, adopting and re-alleging the previous motion and adding alleged violations of the Arkansas Constitution and Rule 12.3 (2008) of the Arkansas Rules of Criminal Procedure. On March 27, 2009, just prior to trial, the circuit court heard arguments on the amended motion to suppress. The amended motion was denied, and the parties proceed with trial.

Testifying for the State was Detective Hudson, followed by Christy Williford. Ms. Williford is a forensic chemist for the Arkansas State Crime Laboratory, and she analyzed the substance sent in by Detective Hudson on this case. Ms. Williford testified that she received a tied blue glove that contained a plastic bag containing four plastic bags, and each one of those bags contained an off-white, rock-like substance that eventually tested to be 6.7850 grams of crack cocaine.

At that time, defense counsel objected, arguing that there was a "substantial break in custody," regarding the discrepancy in Detective Hudson testifying to retrieving fifteen grams and Ms. Williford testifying that she analyzed 6.7850 grams. The circuit court initially denied the admission of State's Exhibit No. 1, the pack-age containing the contraband taken from appellant, based upon appellant's objection. The State then recalled Detective Hudson, who provided more testimony about the chain of custody regarding the seized evidence, and specifically that he placed the plastic bag into a blue police glove and weighed the entire thing versus Ms. Williford separating it all out and weighing without the packaging and the glove. ₅Defense counsel renewed its objection, but the circuit court found that Detective Hudson had sufficiently explained the discrepancy to allow the admission of the exhibit.

After the State rested, defense counsel moved to dismiss the charge, and the circuit court denied the motion. Defense counsel also renewed the motion to suppress based on the alleged unreasonable search and seizure and lack of consent, and the State stood on its original argument that consent had been obtained prior to the search. Acknowledging that he had not been privy to the original hearing on the motion to suppress,[2] the circuit court nevertheless denied the renewed motion to suppress.

Appellant then testified on his own behalf, denying that he had given consent to search, maintaining that he had been detained by officers for approximately thirty minutes, and alleging that officers had strip searched him and performed a body-cavity search of him in open view. Longtime friend of appellant, Monica Foster, testified that she was across the street during the incident between officers and appellant and corroborated his version of the events. She testified that the entire incident lasted approximately forty minutes.

---

**2.** At this point in the proceeding, a different circuit court judge had been assigned to the case.

Upon resting, defense counsel renewed the motion to dismiss and motion to suppress, arguing at this point that officers conducted a body-cavity search in violation of the Fourth Amendment and that they did not have probable cause to detain him after the initial pat-down search. Both motions were again denied.

The circuit court found appellant guilty and sentenced him as previously set forth in a judgment and commitment order filed April 28, 2009. Appellant filed a timely notice of appeal on May 8, 2009, and this appeal followed.

## I. Motion to Suppress

### (A) Standard of Review & Applicable Law

In reviewing the denial of a motion to suppress evidence, our appellate courts conduct a de novo review based upon the totality of the circumstances, reversing only if the circuit court's ruling is clearly against the preponderance of the evidence. *Stokes v. State*, 375 Ark. 394, 291 S.W.3d 155 (2009). Issues regarding the credibility of witnesses testifying at a suppression hearing are within the province of the circuit court. *Id.* Any conflicts in the testimony are for the circuit court to resolve, as it is in a superior position to determine the credibility of the witnesses. *Id.*

A law-enforcement officer lawfully present in any place may, in the performance of his duties, stop and detain any person who he reasonably suspects is committing, has committed, or is about to commit (1) a felony, or (2) a misdemeanor involving danger of forcible injury to persons or of appropriation of or damage to property, if such action is reasonably necessary either to obtain or verify the identification of the person or to determine the lawfulness of his conduct. *See* Ark. R.Crim. P. 3.1 (2008). The justification for the investigative stop depends upon whether, under the totality of the circumstances, the police have specific, particularized, and articulable reasons indicating that the person may be involved in criminal activity. *Hill v. State*, 275 Ark. 71, 628 S.W.2d 284, *cert. denied*, 459 U.S. 882, 103 S.Ct. 180, 74 L.Ed.2d 147 (1982). "Reasonable suspicion" means a suspicion based on facts or circumstances which of themselves do not give rise to the probable cause requisite to justify a lawful arrest, but which give rise to more than a bare suspicion; that is, a suspicion that is reasonable as opposed to an imaginary or purely conjectural suspicion. *See* Ark. R.Crim. P. 2.1 (2008).

Arkansas Rule of Criminal Procedure 3.4 (2008) governs the search for weapons, as follows:

If a law enforcement officer who has detained a person under Rule 3.1 reasonably suspects that the person is armed and presently dangerous to the officer or others, the officer or someone designated by him may search the outer clothing of such person and the immediate surroundings for, and seize, any weapon or other dangerous thing which may be used against the officer or others. In no event shall this search be more extensive than is reasonably necessary to ensure the safety of the officer or others.

Arkansas Rule of Criminal Procedure 3.1 (2008) covers detention without arrest, and the time limits thereof:

A law enforcement officer lawfully present in any place may, in the performance of his duties, stop and detain any person who he reasonably suspects is committing, has committed, or is about to commit (1) a felony, or (2) a misdemeanor involving danger of forcible injury to persons or of appropriation of or damage to property, if such action is reasonably necessary either to obtain or verify

the identification of the person or to determine the lawfulness of his conduct. An officer acting under this rule may require the person to remain in or near such place in the officer's presence for a period of not more than fifteen (15) minutes or for such time as is reasonable under the circumstances. At the end of such period the person detained shall be released without further restraint, or arrested and charged with an offense.

(B) *Discussion*

Appellant initially cites *Minnesota v. Dickerson,* 508 U.S. 366, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993), for the proposition that under the Fourth Amendment to the United States Constitution, a warrantless search of either a person or property is *per se* unreasonable subject to a few, specially defined and well-established[8] exceptions. He notes that he was neither placed under arrest nor advised of his rights, as acknowledged by Detective Hudson, until after the various searches were performed and the contraband evidence was discovered and seized.

Arkansas Rule of Criminal Procedure 12 (2008) governs searches incident to arrest, and Arkansas Rule of Criminal Procedure 12.1 provides that:

An officer who is making a lawful arrest may, without a search warrant, conduct a search of the person or property of the accused for the following purposes only:

(a) to protect the officer, the accused, or others;

(b) to prevent the escape of the accused;

(c) to furnish appropriate custodial care if the accused is jailed; or

(d) to obtain evidence of the commission of the offense for which the accused has been arrested or to seize contraband, the fruits of crime, or other things criminally possessed or used in conjunction with the offense.

Rule 12.2 provides the permissible scope for the search of the person:

An officer making an arrest and the authorized officials at the police station or other place of detention to which the accused is brought may conduct a search of the accused's garments and personal effects ready to hand, the surface of his body, and the area within his immediate control.

Rule 12.3, however, deals specifically with the body-cavity searches of the person, as follows:

(a) Search of an accused's blood stream, body cavities, and subcutaneous tissues conducted incidental to an arrest may be made only:

(i) if there is a strong probability that it will disclose things subject to seizure and related to the offense for which the individual was arrested; and

(ii) if it reasonably appears that the delay consequent upon procurement of a search warrant would probably result in the disappearance or destruction of the objects of the search; and

(iii) if it reasonably appears that the search is otherwise reasonable under the circumstances of the case, including the seriousness of the offense and the nature of the invasion of the individual's person.

(b) Any search pursuant to this rule shall be conducted by a physician or a licensed nurse.

Appellant notes that this rule is in accord with the holding in *Schmerber v. California,* 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966), in which the Fourth Amendment of the United States Constitution was held to limit the power of the police to conduct a warrantless search, incident to arrest, beyond the body's outer

surface and required a search and seizure warrant to go farther. Appellant also cites *State v. Clark*, 65 Haw. 488, 654 P.2d 355 (1982), in which a body-cavity search incident to a warrantless arrest was a violation of the United States Constitution.

Appellant submits that Arkansas courts have not dealt with a case such as presented in these facts, and he refers the court to other states' decisions in similar scenarios. In *McGee v. State*, 105 S.W.3d 609 (Tex. Crim.App.2003), the Texas Criminal Court of Appeals discussed three different classifications of searches, each involving a different degree of intrusion:

(i) a "strip search"—the general inspection of a naked person;

(ii) a "visual body—cavity search"—a visual inspection of a person's anal and genital areas; and

(iii) a "manual body—cavity search"— the probing and touching of the person's body cavity.

The Texas court found that "visual body-cavity searches" were among one of the most intrusive searches and that the intrusive nature cannot be overstated. The court went on to say that such searches can be "demeaning, dehumanizing, undignified, humiliating and terrifying." *Id.* at 616. Four factors to be considered as to whether a search is legal under the Fourth Amendment were listed:

(1) the scope of the search;

(2) the manner in which the search was conducted, i.e., whether the officer had any training;

(3) the justification for the search, i.e., whether there was probable cause to search based on a tip from a third party;

(4) where the search was conducted, i.e., was it conducted in a hygienic environment so that there was no risk of infection.

Appellant also cites *Logan v. Shealy*, 660 F.2d 1007 (4th Cir.1981), where the Fourth Circuit Court of Appeals held that the privacy interests of an individual should be considered and the search should be conducted in a private area, and that strip searches and body-cavity searches involve such an intrusion that they should rarely, if ever, be conducted in public places. Applied to the current case, appellant submits to the court that (1) he was not under arrest; (2) previous searches of his person had been conducted and nothing was found—leaving officers with no reason to continue holding him; (3) he was in custody in a police car and not free to leave; (4) he was searched in the middle of a public street while being held against the hood of a patrol car; (5) the search constituted a body-cavity search that was conducted by an officer that was wearing gloves but did not testify that he had training in conducting body-cavity searches; (6) that the officer testified that he does similar searches "when the need arises."

Regarding consent, appellant maintains that, although Detective Hudson may have had a suspicion, he did not have probable cause to conduct an intrusive search of appellant's person. Appellant urges that he had a reasonable expectation of privacy and that the search was improper pursuant to the Arkansas Rules of Criminal Procedure. Detective Hudson testified that he has consent forms but they were not utilized in this case; the alleged consent obtained from appellant was verbal. Appellant submits that this testimony was the only evidence presented that indicated the search was consensual. He points to the testimony of Ms. Foster, who explained that she saw appellant placed in the police car and the door shut. She also testified that she saw officers remove appellant from the car and overheard them say something to him about taking his belt

off. Ms. Foster explained that she saw two officers hold appellant down and pull down his pants and boxer shorts, pull up his pants, throw him back in the car, return and repeat the strip-search procedure. She testified that he was placed back into the car after the final search and then officers repeated the strip search yet again, the third time taking his pants all the way off.

Appellant urges that under Rule 11.1 (2008) of the Arkansas Rules of Criminal Procedure, the State failed to prove by clear and convincing evidence that there was consent given by him for these searches. *See Ralph v. State,* 76 Ark. App. 1, 62 S.W.3d 1 (2001). Rule 11.1 provides the authority to search and seize pursuant to consent, as follows:

(a) An officer may conduct searches and make seizures without a search warrant or other color of authority if consent is given to the search.

(b) The state has the burden of proving by clear and positive evidence that consent to a search was freely and voluntarily given and that there was no actual or implied duress or coercion.

(c) A search of a dwelling based on consent shall not be valid under this rule unless the person giving the consent was advised of the right to refuse consent. For purposes of this subsection, a "dwelling" means a building or other structure where any person lives or which is customarily used for overnight accommodation of persons. Each unit of a structure divided into separately occupied units is itself a dwelling.

Arkansas Rule of Evidence 11.3 (2008) states that a search based on consent shall not exceed, in duration or physical scope, the limits of the consent given. Accordingly, he asks that his conviction be reversed and remanded due to the circuit court's error in not suppressing the evidence.

₁₂The State points out that, on appeal, appellant appears to argue that the warrantless search was unreasonable under the Fourth Amendment because it did not satisfy either the "search-incident-to-arrest" or the "consent" exception to the warrant requirement. The State submits that he seems to have abandoned the earlier contention that the officers lacked reasonable suspicion to further detain him after the initial pat-down search and, therefore, the court should not consider that particular argument. *See Jordan v. State,* 356 Ark. 248, 147 S.W.3d 691 (2004). Alternatively, the State maintains that the argument was without merit because appellant was detained during a reasonable and proper investigatory stop.

Regarding appellant's argument that the search was unreasonable because it did not comply with the requirements of Arkansas Rule of Criminal Procedure 12, the State argues that it does not govern because the search was not made incident to an arrest. Appellant himself concedes that he was not under arrest at the time of the search, but merely detained in the patrol car during the investigation.

Next, the State addresses appellant's argument that there is insufficient proof that he consented to the search. The State cites *Howe v. State,* 72 Ark. App. 466, 39 S.W.3d 467 (2001), for the proposition that neither probable cause nor reasonable suspicion is necessary for an officer to request consent for a search. An officer may conduct a search of an individual's person without a search warrant or other color of authority if the individual consents to the search pursuant to Rules 11.1 and 11.2 of the Arkansas Rules of Criminal Procedure. The State acknowledges that it has the burden of proving by clear and positive evidence that

consent to a search was freely and voluntarily given and that there was no actual or implied duress or coercion. *See* Ark. R.Crim. P. 11.1(b). Valid consent to search must be voluntary, and voluntariness is a question of fact to be determined from all the circumstances. *See Welch v. State*, 364 Ark. 324, 219 S.W.3d 156 (2005). Additionally, knowledge of the right to refuse consent to a search is not a requirement to prove the voluntariness of consent. *Medlock v. State*, 79 Ark. App. 447, 89 S.W.3d 357 (2002). The standard for measuring the scope of a suspect's consent, for purposes of compliance with Rule 11.3, is that of objective reasonableness—what the typical reasonable person would have understood by the exchange between the officer and the suspect. *Howe, supra.*

The State maintains that Detective Hudson's testimony about the complaint, investigation, and confrontation supports the circuit court's ruling. He testified that the activities engaged in by appellant and the other suspects were consistent with the complaint regarding narcotics dealing and piqued the officers' suspicions. The undercover officers proceeded to engage the suspects with backup from marked patrol cars and uniformed officers, identifying themselves and explaining their investigation of the drug complaint. Testimony indicated that there were fifteen suspects involved. They were all questioned, patted down, and had warrant checks run on them. During this process, Corey Jackson consented to a search for narcotics in his buttocks. He specifically told Detective Hudson that appellant had "dope in the crack of [his] butt."

Detective Hudson testified that he approached appellant and asked if he had any narcotics on him, to which he answered, "No" and that he had already been searched. Detective Hudson explained that he then specifically asked appellant if he had any narcotics in his buttocks, and appellant said he did not. Detective Hudson stated that he asked, "Do you mind if we check?" and that appellant replied, "Yeah, go ahead." Detective Hudson testified that, in order for appellant to be out of the view of the public during the search, officers pulled up two squad cars, opened all the doors and completely surrounded the cars with officers. Detective Hudson explained that he then pulled appellant's pants down just past his bottom and located the contraband in the crack of appellant's buttocks. It was after the drugs were discovered and seized that appellant was placed under arrest.

Detective Hudson testified that the whole investigation took approximately ten minutes, and further explained that he did not perform a body-cavity search of appellant. He specified that the drugs were not found in appellant's anus, just in the crack of his buttocks area. Further, Detective Hudson testified that (1) he did not tell appellant he was under arrest before the search; (2) he told appellant he was investigating but did not tell him he had to cooperate with the search; (3) explained that if appellant had told him he did not want to be searched, "[t]here was nothing I could do"; (4) he did not lead appellant to believe that he had to cooperate with the search; (5) appellant had plenty of time to refuse to consent to the search; (6) appellant cooperated fully.

The State urges that the officers clearly had reasonable suspicion that appellant was involved in narcotics dealing, and therefore, the investigative stop and detention were proper. Likewise, based on the details of the complaint, they had a reasonable suspicion that appellant was armed. Accordingly, we hold that the initial pat-down search was proper.

The State also contends that the length of detention was also reasonable.

Officers detained all the suspects while they checked for weapons, identification, and outstanding warrants. According to Detective Hudson, this process took approximately ten minutes. However, the State submits that, even if the detention had exceeded fifteen or even thirty minutes, as suggested by appellant, the duration was reasonable in light of the number of suspects involved—approximately fifteen individuals. In determining whether the duration of a detention is reasonable, courts consider the law-enforcement purpose to be served and the time reasonably necessary to effectuate that purpose. *See Omar v. State*, 99 Ark. App. 436, 262 S.W.3d 195 (2007). The State urges, and we agree, that the detention in this case was not unreasonable because the officers diligently pursued a means of investigation that dispelled their suspicions quickly. *Id.*

Moreover, during the investigation, the State points out that appellant was asked for, and gave, his consent to search for narcotics in his buttocks. Detective Hudson testified that appellant cooperated fully and did nothing to indicate that his consent was not freely and voluntarily given. The State notes that Detective Hudson was not required to tell appellant that he could refuse consent to the search, and given the fact that appellant was a habitual felon with three prior cocaine arrests, this was not his first run-in with the law. The State submits that any contention that he merely acquiesced to Detective Hudson's claim of authority is merit less. Although appellant's story, and that of his friend, Ms. Foster, was different from that of Detective Hudson, specifically with regard to consent and his being thrown in and out of the patrol car, the circuit court found Detective Hudson's testimony to be more credible. The State urges this court to defer to that determination. *See Stokes, supra.*

The State reiterates that the search did not exceed the scope of the consent given, as a typical reasonable person would have understood that Detective Hudson was requesting to look in the buttocks area for narcotics based upon his request. That is specifically what he asked and what he alleges appellant consented to. Detective Hudson specifically testified that he only visually inspected the crack area of appellant's buttocks; he did not search inside his anus for the drugs. The request for consent was specific, and the search was conducted in just the manner and extent requested.

Finally, the State urges that the search was reasonable. Officers attempted to protect appellant's privacy during the search by pulling up two patrol vehicles, opening all four doors, and surrounding the vehicles with officers to further obstruct the public's view. To avoid unnecessary intrusion, Detective Hudson stated that he lowered appellant's pants just below his bottom. It is undisputed that Detective Hudson wore latex gloves during the search. The State maintains that because the investigatory stop and detention were reasonable and because appellant voluntarily consented to the search of his buttocks for narcotics, this court should affirm.

While we acknowledge that the evidence before us regarding the consent to search is in direct conflict, weighing the evidence and assessing the credibility of the witnesses are matters for the fact-finder. *Bush v. State*, 90 Ark. App. 373, 206 S.W.3d 268 (2005). The jury is free to believe all or part of any witness's testimony and resolves questions of conflicting testimony and inconsistent evidence. *See Gikonyo v. State*, 102 Ark. App. 223, 283 S.W.3d 631 (2008). Reconciling conflicts in the testimony and weighing the evidence are matters within the exclusive province

of the jury. *See Mitchem v. State,* 96 Ark. App. 78, 238 S.W.3d 623 (2006). Accordingly, based upon our deference to the finder of fact on credibility determinations, we affirm on this issue.

## II. Chain of Custody Objection

### (A) Standard of Review

We do not reverse a circuit court's ruling on the admissibility of evidence under the chain of custody rule absent a showing that the court abused its discretion. *Kincannon v. State,* 85 Ark. App. 297, 151 S.W.3d 8 (2004). The purpose of establishing a chain of custody is to prevent the introduction of evidence that is not authentic or that has been tampered with. *Guydon v. State,* 344 Ark. 251, 39 S.W.3d 767 (2001). To prove authenticity of evidence the State must demonstrate a reasonable probability that the evidence has not been altered in any significant manner. *Id.* To allow introduction of physical evidence, it is not necessary that every moment from the time the evidence comes into the possession of a law-enforcement agency until it is introduced at trial be accounted for by every person who could have conceivably come in contact with the evidence during that period. *Id.* Nor is it necessary that every possibility of tampering be eliminated; it is only necessary that the trial judge, in his discretion, be satisfied that the evidence presented is genuine and, in reasonable probability, has not been tampered with. *Id.* To reiterate, on review, we will not reverse a ruling on an evidentiary matter regarding the admissibility of evidence absent an abuse of discretion because such matters are left to the sound discretion of the trial court. *Id.*

### (B) Discussion

As previously stated, Detective Hudson testified under oath at a pretrial hearing held on April 28, 2008, that he found approximately fifteen grams of crack cocaine in appellant's buttocks during the investigation. Subsequently, at trial, on March 27, 2009, Detective Hudson again testified that he found approximately fifteen grams of crack cocaine on appellant's person, specifically, in his buttocks. Detective Hudson testified that the contraband was in a plastic baggie when he recovered it, and that he placed it in a blue police glove. The evidence was eventually admitted as State's Exhibit No. 1.

Conversely, the State's witness, Ms. Williford, testified that when she received what was marked State's Exhibit No. 1 for analysis, she found it to weigh just over six grams (6.7850 grams), and her findings were stated in her report that was marked and admitted as State's Exhibit No. 2. Ms. Williford testified that State's Exhibit No.1 was submitted to her as a sealed, manilla envelope containing a blue glove and four plastic bags, each containing off-white, rock-like substances, which she analyzed to be 6.7850 grams of cocaine base, a difference of approximately nine grams compared to the fifteen grams testified to by detective Hudson.

Appellant's counsel objected, noting that there was a substantial break in custody with such a large difference between the quantities testified to. The circuit court initially denied the State's attempt to introduce State's Exhibit No. 1, but changed that ruling after Detective Hudson testified on recall that he did not separate the drugs out when he weighed them. Detective Hudson stated that the fifteen grams was the "package weight" including the baggies and glove, as well as the contraband itself. Appellant alleges that this was a substantial change in his testimony from the two prior occasions, and notes that Detective Hudson never explained why his report did not contain this expla-

nation or why he only offered it after the forensic chemist provided a drastically different amount in her report. Appellant argues that Detective Hudson's testimony was "clearly an attempt to justify his gross misstatement and substantial break in the chain of custody."

Appellant cites *Crisco v. State*, 328 Ark. 388, 943 S.W.2d 582 (1997), in which our supreme court held that methamphetamine was easily interchangeable, and because of varying descriptions between witnesses, an inference of a break somewhere in the chain of custody had been raised. The officer testified that the drugs were an "off-white powder substance," but the chemist testified that the drugs were a "tan, rock-like substance." The supreme court held that the circuit court abused its discretion by admitting the evidence when it had not been properly authenticated. The supreme court noted that the purpose of establishing chain of custody is to prevent introduction of evidence that has been tampered with and is not authentic. Minor uncertainties in the proof of chain, as argued by counsel and weighed by the jury, do not render evidence inadmissible as a matter of law; *see Nash v. State*, 267 Ark. 870, 591 S.W.2d 670 (1979); however, proof of chain of custody for interchangeable items, like drugs or blood, needs to be more conclusive. *See Lee v. State*, 326 Ark. 229, 931 S.W.2d 433 (1996).

In the instant case, appellant notes that there were obvious inconsistencies in the testimony given by the officer at the pretrial hearing in April 2008 and his testimony at trial in March 2009. Detective Hudson did not offer any explanation of the weight in his previous testimony, and further, there was no evidence introduced to either explain or confirm his explanation of the weight discrepancy. Accordingly, appellant maintains that the circuit court erred in admitting this evidence, and he asks that the conviction be reversed and remanded.

The State responds by stating that the purported discrepancy in this case—the weight of the contraband seized—did not render State's Exhibit No. 1 inadmissible. The discrepancy was explained by Detective Hudson in that he placed the plastic bag containing the contraband into a blue police-department bag and weighed the entire thing, at approximately fifteen grams, before sealing, dating, and initialing it to send to the Arkansas State Crime Laboratory. Detective Hudson was also the person who recovered the evidence from the property room on the date of trial, at which time it was sealed. He confirmed the numbers and contents of the bag—consistent with what he had originally sent to be analyzed, and noted when he opened the package at trial that the lab had separated the plastic bag of cocaine from the blue glove. Ms. Williford's testimony was consistent with Detective Hudson's regarding the package, the markings, and the contents. She further explained her analysis of the substance contained therein, as well as how she separated out the contents for weighing purposes.

This case is distinguishable from *Crisco, supra*, which was based upon the fact that there was no evidence that the substance in question was the same one sent to the crime lab. There, the supreme court held that the State was required to do more to establish the authenticity of the drug tested than merely trace the route of the envelope containing the substance. There were significant discrepancies about the very appearance of the two substances in *Crisco*, whereas here, there was merely a weight difference that was sufficiently explained by the officer when he was allowed to clarify his procedure.

The instant case is factually more similar to *Jones v. State*, 82 Ark. App. 229, 105

S.W.3d 835 (2003), in which this court held that a circuit court did not abuse its discretion by allowing the admission of drug evidence, even though there was a considerable discrepancy between the weights provided by a police officer and a forensic chemist. Like the instant case, the appellant challenged the admission of the evidence over his chain-of-custody objection, based solely on a discrepancy between the weights—the officer testified that the drugs weighed approximately fifty-nine pounds and the forensic chemist testified that they weighed approximately forty point seven pounds. Also like the instant case, the officer testified that he weighed, not just the drugs but, the bags they were in with all the contents. The court in *Jones* held that, while the discrepancy was considerable, the officer's testimony explained the difference in weights, and the circuit court merely had to be satisfied within a reasonable probability that no one had tampered with the evidence. *Id.*

 We hold that, based on the analysis followed in *Jones,* the circuit court did not abuse its discretion in admitting the evidence; accordingly, we affirm on this point as well.

Affirmed.

BROWN, J., agrees.

HART, J., concurs.

HART, J., concurring.

I agree that this case should be affirmed, but I write separately to disclose my reasoning for affirming with regard to the search issue. The manner and extent of the State's intrusion into Mr. Jackson's person is certainly disturbing—the police exposed his private parts in the middle of a public street so that they could search for contraband in his "butt cheeks." However, resolution of this case rests entirely upon the validity of the consent that the police claimed that Mr. Jackson gave to them. The majority apparently believes that this is a case of whether to believe the police when they said that Mr. Jackson consented or Mr. Jackson, who denied giving that consent. If indeed that is what the majority is saying, this analysis appears overly simplistic.

Rule 11.1 of the Arkansas Rules of Criminal Procedure states in pertinent part:

(a) An officer may conduct searches and make seizures without a search warrant or other color of authority if consent is given to the search.

(b) The state has the burden of proving by clear and positive evidence that consent to a search was freely and voluntarily given and that there was no actual or implied duress or coercion.

Accordingly, under Rule 11.1, the question is never merely whether a defendant voiced consent, but also whether he voiced that consent to search "freely and voluntarily" without "actual or implied duress or coercion." Under our standard of review, we are required to analyze this question employing an objective standard in reviewing the totality of the circumstances. *Benavidez v. State,* 352 Ark. 374, 101 S.W.3d 242 (2003). This review necessarily means doing more than looking at the arresting officer's testimony that the appellant's consent was voluntary. However, after careful consideration, and multiple readings of the trial court's rulings with regard to the search, I have concluded that the issue of the validity of Mr. Jackson's consent is not preserved for appellate review.

It is axiomatic that on appeal, we may only consider arguments that are raised to the trial court and ruled upon. *Akins v. State,* 330 Ark. 228, 955 S.W.2d 483 (1997). Here, there were rulings on several aspects of Mr. Jackson's efforts to suppress

the fruits of the search. His initial motion to suppress alleged that the search violated his constitutional rights because the police did not have "probable cause or reasonable suspicion to run a body cavity search." The motion specifically referred to the seizure of Mr. Jackson as "an illegal arrest." This motion was denied prior to the proceeding that is quoted at length by the majority. Prior to this proceeding, an amended version of the suppression motion was filed, which in addition to re-alleging the grounds in the first motion, also specifically referenced Rule 12.3 of the Arkansas Rules of Criminal Procedure, which concerns search of body cavities and requires a doctor or a nurse to search the body cavities. This motion was heard simultaneously with Mr. Jackson's bench trial.

At the close of the State's case, Mr. Jackson's trial counsel "renewed" his suppression motion. He specifically referenced Rule 11.1 of the Arkansas Rules of Criminal Procedure and asserted that "mere acquiescence to authority is not consent." However, it is apparent that Mr. Jackson did not obtain a ruling from the trial court regarding the validity of his consent. In its ruling from the bench, the trial court stated its understanding that all that Mr. Jackson was challenging, beyond what had been ruled on when the court had disposed of the original suppression motion, was that the "period of time [was] longer than necessary or that he was held after there was a warrant check and there weren't any outstanding warrants, and should have been released after that instead of held and asked for consent to search." The trial court found the continued detention reasonable.

After Mr. Jackson and Monica Foster testified to dispute the police's account of the search, Mr. Jackson again "renewed" his motion, arguing that the body-cavity-

search procedures were improper and that the police violated Rule 3.1 of the Arkansas Rules of Criminal Procedure due to the length of his detention after the fruitless pat-down search. The trial court again denied Mr. Jackson's motion to suppress without ruling on the validity of his consent. As alluded to previously, none of these rulings preserve the question of the validity of Mr. Jackson's consent for our review.