2011 Ark. App. 83

**Mario TATUM, Appellant**

v.

**STATE of Arkansas, Appellee.**

**No. CA CR 10–626.**

Court of Appeals of Arkansas.

Feb. 2, 2011.

B. Dale West, Monticello, for appellant.

John T. Adams, Little Rock, for appellee.

DAVID M. GLOVER, Judge.

Appellant, Mario Tatum, was tried by a jury and found guilty of the offense of possession of cocaine and possession of marijuana (second offense). He was sentenced to six years in the Arkansas Department of Correction on the cocaine conviction and five years on the marijuana conviction. In this appeal, he challenges the sufficiency of the evidence and the chain of custody on the controlled substances. We affirm.

## Trial Testimony

Corporal Larry McMahon of the Arkansas State Police testified that he took evidence related to this case to the crime lab in Little Rock; that he was asked to do so by Special Agent Huston Talley; that he picked the evidence up from Talley when McMahon was in Pine Bluff at a monthly meeting; that he recognized the crime-lab submission sheet that he used to submit the evidence to the crime lab; and that it was submitted on December 17, 2009. He explained that his name was on the submission sheet, which was marked as a State exhibit.

Kenya Davis testified that he was with appellant on the night of November 21, 2009. He explained that they were heading from Banks, Arkansas, to Warren, Arkansas, and that appellant was driving the car. He said that he (Davis) was asleep when he heard appellant say, "police." He stated that appellant turned into the driveway belonging to Tommy Castleberry. Davis told the police that he had not seen any dope and that the only time he was aware of the driver's side door opening was after he and appellant had been stopped by the police.

Trooper Brian Dixon of the Arkansas State Police testified that on the night in question, he was in his patrol car, parked next to another patrol car driven by Trooper Byron Curry, and that he noticed that the vehicle driven by appellant did not have any license-tag lights. He explained that he got behind appellant's vehicle and noticed the door open slightly and something being thrown from the vehicle. He said that appellant did not pull over immediately and that he followed him into a private drive. He explained that he exited his patrol car and asked appellant and his passenger what they had thrown out of the vehicle; that they expressed no knowledge of what he was talking about; and that he walked back down the road and retrieved what he thought to be three bags of marijuana and one small bag of cocaine. According to him, he secured the contraband in his patrol car and then gave the contraband to Officer Huston Talley a couple of days later. He explained that he was the only person to have control of his patrol car. He testified that the contraband was in the same condition when he took it out as when he placed it in his vehicle. He stated that it was Officer Talley who placed the contraband in a different package.

Trooper Dixon testified that video of the traffic stop was taken from the camera in his car. He said that the stop took place at 11:16 p.m. and it was about 200 yards from the place he pulled off the pavement until he reached the house where the stop was made. He explained that he performed a search of appellant; that he did not find any drugs on appellant's person or

on his passenger, Kenya Davis. He testified that he searched the car thoroughly, looking for drugs; that there were no drugs or paraphernalia in the vehicle. He said that appellant denied any knowledge of throwing anything out of the car. He testified that the bags were found about twenty-five to thirty yards from the driveway.

Officer Talley testified that it is his practice when called to collect evidence in a case to package the evidence and put it into the evidence vault until it is transported to the crime lab; that when he packs the evidence, he puts evidence tape around the top of the bag with his initials and call number/duty number on the tape on both sides, front and back. He explained, that in that way, he can show that it has not been opened once he seals it. In this case, he said that he received the evidence from Trooper Dixon. He also testified that Officer Roger McLemore was the one who had retrieved the evidence from the crime lab and brought it back to the headquarters evidence vault and that he (Talley) had gotten it out yesterday. Officer Talley acknowledged that he had not attempted to get fingerprints from the package.

When the State attempted to introduce the marijuana into evidence, the defense objected based on "chain of custody," "because Roger McLemore, the person who went to retrieve the drugs from the crime lab, State's Exhibit 5, is not here and present to testify that that package is in substantially the same condition as it was when he received it." The court stated for the record that State's Exhibit 5 was sealed on both ends, one end with the white evidence tape and the initials HDT across it; that Officer Talley had testified that those were his initials and that he sealed it when he packaged it for the crime lab; and that the other end was sealed, with packaging tape across it and a date of 1/13/2010 with initials that appeared to be "LW" and a CID number on it that matched the agency case number of the report of lab analysis, which was introduced as another State exhibit. The trial court noted that it was cutting the end of the envelope with the white evidence seal on it, and that within the package there were two separate sealed plastic packets, both bearing the laboratory case number. The court then stated that, based on the testimony in the case, it was able to conclude that the exhibit was what it was represented to be and that Officer McLemore's absence was a matter of weight, not admissibility, and that the exhibit was to be admitted into evidence.

Trooper Curry testified that on November 21, 2009, he and Trooper Dixon were working together on Bradley County Road 32. He said that he was probably about half a mile away from Dixon when he called and reported that he was making a traffic stop and needed assistance. He testified that he traveled down Old Farmerville Road and saw the patrol-car lights pulled into a private driveway. Trooper Curry explained that when he arrived, Trooper Dixon was identifying the driver; that he (Curry) patted down the passenger; that Dixon said he was going to walk up the road to get something that was thrown out, and when Dixon walked back up, he told Curry to arrest appellant and his passenger, Davis. Curry said Dixon showed him the bags, with one containing marijuana and the other cocaine. He acknowledged on cross-examination that he participated in the search of the vehicle and did not recall finding anything illegal. Appellant moved for directed verdict. The motion was denied.

Appellant testified that he had been convicted in 2004 of possession of marijuana with intent and possession of drug paraphernalia. He said that on November 21,

2009, at approximately 11 p.m., he was traveling on a dirt road, coming from Banks, Arkansas, where he lives. According to him, he got on the Farmerville Road, then turned down a dirt road, saw the police-car lights and pulled over into the Castleberry driveway. He denied ever opening his car door and throwing anything out. Appellant stated that his license-plate lights might not have been working, but that all the other lights worked properly and that he did not have any crack cocaine or marijuana in his possession and neither did his passenger, Kenya Davis.

Appellant rested and moved again for a directed verdict based on insufficient evidence and a break in the chain of custody. The motions were denied.

### Sufficiency of the Evidence

■ For his first point of appeal, appellant contends that there was insufficient evidence for the jury to find that he was in possession of marijuana and cocaine. We disagree.

■ We treat a directed-verdict motion as a challenge to the sufficiency of the evidence supporting a conviction. *Morris v. State*, 2011 Ark. App. 12, 2011 WL 51462. In reviewing the denial of a directed-verdict motion, we determine whether substantial evidence, either direct or circumstantial, supports the verdict. *Id.* We view the evidence in the light most favorable to the verdict and only consider evidence that supports the verdict. *Id.* Substantial evidence is evidence that is forceful enough to compel a conclusion one way or the other beyond suspicion or conjecture. *Id.* Weighing the evidence and making credibility determinations are for the fact-finder, not the appellate court. *Id.*

In making his argument that the trial court erred in denying his motion for directed verdict, appellant notes that the video did not show his door opening and that no drugs were found on him or his passenger or in the vehicle. He concludes therefore that the evidence was not sufficient to convict him of possession of cocaine or marijuana.

Viewing the evidence in the light most favorable to the verdict, considering only that evidence that supports the verdict, it is clear that appellant's argument cannot be successful. Trooper Dixon testified that he saw the driver's side door of appellant's vehicle open slightly, with something being thrown out. He also testified that he walked back to that area after the stop and retrieved bags containing what proved to be marijuana and cocaine. The jury weighed the evidence, obviously did not find appellant or his passenger to be credible, and found appellant guilty. The evidence was clearly sufficient to support the conviction.

### Chain of Custody

■ For his second point of appeal, appellant contends that the chain of custody was not established regarding the marijuana and the cocaine because "Mr. McLemore and Mr. McMahon provided no evidence as to the drugs, and because the trial judge basically provided the missing parts of the chain." He argues, therefore, that the trial court abused its discretion in allowing the evidence to be admitted. We disagree.

■ We do not reverse a circuit court's ruling on the admissibility of evidence under the chain of custody rules absent a showing that the court abused its discretion. *Jackson v. State*, 2010 Ark. App. 359, 374 S.W.3d 857. We have explained that the purpose of establishing a chain of custody is to prevent the introduction of evidence that is not authentic or

that has been tampered with. *Id.* To prove authenticity of evidence the State must demonstrate a reasonable probability that the evidence has not been altered in any significant manner. *Id.* For the trial court to allow admission of physical evidence, it is not necessary for every person who could have conceivably come into contact with the evidence to account for every moment from the time the evidence comes into the possession of a law-enforcement agency until it is introduced at trial. *Id.* It is also not necessary to eliminate every possibility of tampering. *Id.* It is only necessary that the trial court, in its discretion, be satisfied that the evidence presented is genuine and, in reasonable probability, has not been tampered with. *Id.*

We limit our discussion of this point to the scope of the argument raised at trial, *i.e.*, the absence of testimony from Officer McLemore, who retrieved the drugs from the crime lab, "that the package was in substantially the same condition as it was when he received it." While we would also not find a basis for reversal concerning the absence of testimony from Officer McMahon or the handling of the evidence by the trial court, it is unnecessary to discuss those portions of appellant's argument because they were not raised below.

Appellant contends that Officer McLemore was not present at trial to state that the packages of cocaine and marijuana were the same substances that he had retrieved from the evidence vault. Thus, contrary to what *Jackson* explains as necessary to satisfy chain-of-custody concerns, appellant's argument seems to be that the State did not account for "every moment from the time the evidence comes into the possession of a law-enforcement agency until it is introduced at trial ... by every person who could have conceivably come in contact with the evidence during that period." Our explanation of what is necessary

to satisfy chain-of-custody concerns in *Jackson* makes clear that such a moment-by-moment account is not necessary. The trial court satisfied itself that the evidence was genuine and that there had been no tampering. Appellant gave neither the trial court nor this court on appeal any basis for concluding otherwise. We find no abuse of the trial court's discretion.

Affirmed.

ROBBINS and WYNNE, JJ., agree.