

# ARKANSAS COURT OF APPEALS

DIVISION I
No. CR-14-823

| | |
|---|---|
| STEVEN ANDREW CURTIS<br>APPELLANT | **Opinion Delivered** March 11, 2015 |
| V. | APPEAL FROM THE GRANT COUNTY CIRCUIT COURT [NO. 27CR-2013-71-1] |
| STATE OF ARKANSAS<br>APPELLEE | HONORABLE CHRIS E WILLIAMS, JUDGE |
| | AFFIRMED |

## BART F. VIRDEN, Judge

A Grant County jury found appellant Steven Curtis guilty of delivery of methamphetamine and maintaining a drug premises, and he was sentenced as a habitual offender to serve consecutive terms of twenty and ten years, respectively, and fined a total of $10,000. Curtis argues on appeal that the trial court erred in denying his directed-verdict motions and that the trial court erred in admitting the methamphetamine and test results into evidence because the State failed to sufficiently establish the chain of custody. We affirm.

### I.  *Trial Testimony*

Nathan Thomas, a confidential informant, testified that he approached police officers about doing a controlled drug buy involving Curtis. On August 7, 2013, Thomas met with a Drug Task Force agent, Eddie Keathley, at the Grant County fairgrounds. Keathley searched Thomas and gave him money to purchase methamphetamine and a video recorder, resembling a key fob, to record the transaction. Thomas testified he went to the trailer park

where Curtis lived, he gave Curtis the money in the living room, and Curtis then led him to a bedroom. Thomas stated that Curtis took the methamphetamine from "a pretty good size little bag" and put it into a smaller 1-inch x 1-inch plastic bag. Thomas said Curtis then weighed the drug and gave it to him. Thomas left Curtis's place, returned to the fairgrounds, and gave the bag to Keathley. A video of the transaction was played for the jury. When Thomas's testimony resumed, he explained that the video had stopped working at some point inside the trailer.

Eddie Keathley, an employee of the Sheridan Police Department and supervisor over the Group Six Drug Task Force, testified that he searched Thomas before giving him $100 to purchase one gram of methamphetamine from Curtis. Keathley followed Thomas and watched him go inside a trailer. When Thomas left the trailer, Keathley followed him back to the fairgrounds. Keathley explained it was not unusual for the video recorders to stop working, and the device either ran out of space or the battery died. Keathley testified that Thomas gave him a yellow plastic bag that contained a crystal-like substance. The substance field tested positive for methamphetamine. Keathley photographed the drug, weighed it, and placed it inside an envelope that he put in the evidence locker at the police department. Keathley said that a log sheet was stored with the evidence. Keathley wrote "storage to Crime Lab" on the log sheet and, after picking the evidence up from the crime lab, he wrote, "Crime Lab to storage." Keathley stated that no one else at the police department had handled the evidence. Keathley submitted the evidence to the crime lab on September 16, 2013. When Keathley retrieved it from the lab, the evidence was in the same envelope he

SLIP OPINION



had submitted but had writing on it from people at the crime lab.

Christy Williford, a forensic chemist at the Arkansas State Crime Laboratory, testified that she retrieved an envelope from the lab's secure storage in the evidence-receiving section on September 26, 2013. She inventoried its contents, weighed the substance, and tested it. She performed two tests that determined the crystalline substance was methamphetamine. Williford then sealed the envelope, placed her initials on it, and returned it to the evidence-receiving section where she checked it back in with an evidence technician on October 7, 2013. Defense counsel, on voir dire of the witness, asked Williford who put the evidence into secure storage when it was received from Keathley, and Williford testified that the electronic chain-of-custody report indicated that it was Mandy Fowler, although she did not see the exchange personally. On re-direct examination, Williford testified without objection that, when evidence comes into the lab, an evidence technician, in this case, Fowler, enters the data into their computer system, Justice Tracks, and it is assigned a case number and a bar code, which tracks the evidence's movement within the crime lab.

## II.  *Arguments on Appeal*

### A.  Sufficiency of the Evidence

Curtis argues that the trial court erred in denying his directed-verdict motion on delivery of a controlled substance. We treat a directed-verdict motion as a challenge to the sufficiency of the evidence supporting a conviction. *Tatum v. State*, 2011 Ark. App. 83, 380 S.W.3d 519. In reviewing the denial of a directed-verdict motion, we determine whether substantial evidence, either direct or circumstantial, supports the verdict. *Id*. We view the

3

evidence in the light most favorable to the verdict and consider only evidence that supports the verdict. *Id.* Substantial evidence is evidence that is forceful enough to compel a conclusion one way or the other beyond suspicion or conjecture. *Id.* Weighing the evidence and making credibility determinations are for the fact-finder, not the appellate court. *Id.*

The only aspect of Curtis's argument that goes to sufficiency of the evidence is his contention that the video did not show the actual drug transaction and that Thomas's testimony was insufficient without the video. We disagree.

Curtis raised no objection to the video when it was played at trial. The video shows Curtis counting money in the living room and later shows Curtis in a bedroom putting something into a tiny plastic bag. Thomas's testimony filled in any gaps as to what occurred during the transaction. Weighing the evidence and making credibility determinations are for the fact-finder. *Tatum*, *supra.* Moreover, Keathley testified that Thomas did not have drugs on him before the transaction, that he observed Thomas going into and coming out of Curtis's trailer, and that Thomas then handed him a small plastic bag, which Williford confirmed contained approximately one gram of methamphetamine. A jury could reasonably conclude that Curtis delivered a controlled substance based on this evidence. We hold that there was substantial evidence to support Curtis's conviction for delivery of a controlled substance.

Next, Curtis argues that there was insufficient evidence to support his conviction for maintaining a drug premises. It is unlawful for any person knowingly to keep or maintain any store, shop, warehouse, dwelling, building or other structure or place or premise that is

resorted to by a person for the purpose of using or obtaining a controlled substance or that is used for keeping a controlled substance. Ark. Code Ann. § 5-64-402(a)(2) (Supp. 2011).

Curtis argues that there was no evidence that he owned or rented the trailer. Ownership of the dwelling is not an element of the crime. In any event, Thomas testified that Curtis lived in the trailer. The evidence established that, after he was given money in the living room of the trailer, Curtis went to a bedroom where he removed one gram of methamphetamine from a larger bag and placed it into a smaller bag. We hold that there was substantial evidence that Curtis knew the dwelling was used to keep and sell controlled substances, and we affirm his conviction for maintaining a drug premises.

### B.   Hearsay & Confrontation Clause

Curtis argues that because the actual person who received the evidence at the crime lab was not present and available for cross-examination, "the hearsay rules" and the Confrontation Clause were violated. Curtis first raised these arguments in his motion for a directed verdict. A contemporaneous objection is generally required to preserve an issue for appeal, even a constitutional issue. *Mathis v. State*, 2012 Ark. App. 285, 423 S.W.3d 91. Thus, we will not address these arguments; however, Curtis's invocation of the Confrontation Clause appears to be a challenge to the evidence's chain of custody, which will be discussed below. *Freeman v. State*, 2010 Ark. App. 8 (noting that, although appellant argued that State's failure to call individual who transported fingerprint evidence to crime lab was violation of Confrontation Clause, appellant was actually challenging the chain of custody).



C. Chain of Custody

Curtis argues that the trial court erred in admitting into evidence the methamphetamine and its test results because the chain of custody had been broken. We do not reverse a circuit court's ruling on the admissibility of evidence under the chain-of-custody rules absent a showing that the court abused its discretion. *Tatum, supra.* The purpose of establishing a chain of custody is to prevent the introduction of evidence that has been tampered with or is not authentic. *Jones v. State*, 82 Ark. App. 229, 105 S.W.3d 835 (2003). To prove authenticity of evidence, the State must demonstrate a reasonable probability that the evidence has not been altered in any significant manner. *Tatum, supra.* For the trial court to allow admission of physical evidence, it is not necessary for every person who could have conceivably come into contact with the evidence to account for every moment from the time the evidence comes into the possession of a law-enforcement agency until it is introduced at trial. *Id.* It is also not necessary to eliminate every possibility of tampering. *Duggar v. State*, 2013 Ark. App. 135, 427 S.W.3d 77. It is necessary only that the trial court, in its discretion, be satisfied that the evidence presented is genuine and, in reasonable probability, has not been altered. *Id.*

Specifically, Curtis argues that the evidence technician at the crime lab did not testify that she received the evidence from Keathley, entered data into the computer system, put the handwritten case number on the crime lab's submission sheet, or placed a bar-code sticker on the envelope containing the evidence. Curtis also refers to alleged discovery violations involving a bar-code sheet from the crime lab and a log sheet from the Drug Task

Force locker. Finally, Curtis contends there was no evidence as to the sample's location for nine days between the time Keathley dropped it off at the crime lab and when Williford tested it.

According to Keathley, he was the only person at the police department who handled the methamphetamine, he personally dropped it off at the crime lab for testing, and he picked it up from the crime lab. Williford testified that, when evidence arrives at the crime lab, it is bar coded so that its every movement within the lab is tracked. She testified the evidence remained in secure storage at the crime lab until she was ready to test it. Williford did not indicate anything was amiss when she retrieved the envelope from secure storage for testing. The evidence shows, when Williford had finished testing the sample, she took it back to the secure-storage area where it remained until Keathley returned for it. The trial court was satisfied the evidence had not been tampered with or altered. Also, considering that Curtis does not contend the evidence was contaminated, we cannot say the trial court abused its discretion in admitting the methamphetamine and the test results.

Affirmed.

GRUBER and GLOVER, JJ., agree.

*Gregory Crain*, for appellant.

*Dustin McDaniel*, Att'y Gen., by: *LeaAnn J. Adams*, Ass't Att'y Gen., for appellee.

SLIP OPINION